John S. TERKET, Plaintiff-Appellant,

v.

Harold LUND et al.,
Defendants-Appellees.

No. 79–1964.

United States Court of Appeals,
Seventh Circuit.

Argued May 19, 1980.

Decided June 6, 1980.

Gordon J. Arnett, Chicago, Ill., for plaintiff-appellant.

Janette Freeman, City of Evanston, Evanston, Ill., for defendants-appellees.

Before PELL, SPRECHER and CUDAHY, Circuit Judges.

PELL, Circuit Judge.

The plaintiff, John Terket, brought this civil rights action alleging that the defendants, various police officers and a complaining witness, maliciously had him arrested and prosecuted on false charges of disorderly conduct. The district court granted the defendants' motion for summary judgment on the grounds that facts shown in the defendants' affidavits, and not contradicted by Terket, established probable cause for the arrests and prosecution; and that Illinois law authorized the defendant police officers to execute the arrest warrants anywhere in the state. Terket filed an appeal from that judgment. In his brief on appeal, he also contends that the district court's subsequent order, awarding attorneys' fees against him under 42 U.S.C. § 1988, was improper because the district court lost jurisdiction to enter such an order when Terket filed his notice of appeal from the underlying judgment.

I.

Terket contends that summary judgment was improper because genuine fact issues exist as to two matters: (1) whether the defendant Evanston police officers acted beyond their authority by arresting Terket in Chicago under an arrest warrant issued by a judge in Evanston; and (2) whether defendant Harold Lund, one of the Evanston police officers, knew the complaining witness, Lucille Buches, and maliciously caused her to sign the disorderly conduct complaint against Terket. Neither contention has any merit.

■ Terket's allegation that the police officers had no authority to arrest him in Chicago raises an issue of law, not fact. It is not disputed that these defendants were Evanston police officers executing an Evanston arrest warrant in Chicago. The issue before the district court then became whether, on those undisputed facts, the defendants were entitled to judgment as a matter of law that their conduct was legally authorized and therefore not a violation

of Terket's rights. Rule 56(c), Fed.R.Civ.P. The court correctly held that Illinois law authorized the Evanston police to execute an arrest warrant anywhere in the state. Ill.Rev.Stat. ch. 38, § 107–5(c). The case to the contrary relied on by Terket was reversed by the Illinois Supreme Court. *People v. Carnivale*, 61 Ill.2d 57, 329 N.E.2d 193 (1975), *rev'g*, 21 Ill.App.3d 780, 315 N.E.2d 609 (1974). *Accord People v. Durham*, 71 Ill.App.3d 725, 28 Ill.Dec. 350, 390 N.E.2d 517 (5th Dist. 1979); *People v. Clark*, 46 Ill.App.3d 240, 4 Ill.Dec. 785, 360 N.E.2d 1160 (5th Dist. 1977).

■ Terket also claims there are disputed fact issues relating to whether Lund and Buches were friends prior to the arrests and prosecution and whether Lund improperly induced Buches to sign the disorderly conduct complaints. The existence of disputed facts is not enough, however, to defeat a motion for summary judgment. The disputed facts must also be material to the legal issues in the case. *See* Rule 56(c), *supra*.

■ Construed liberally, Terket's § 1983 complaint alleges a deprivation of liberty without due process through unlawful arrest, false imprisonment, and malicious prosecution.[1] Under Illinois law, an essential element of such a cause of action is that the arrests, imprisonment, or prosecution be undertaken without probable cause. Both lack of probable cause and malice must be shown. Thus proof of the actual existence of probable cause is an absolute bar to the action. If the defendants had probable cause to believe that

Terket was guilty of disorderly conduct, their allegedly malicious motives are immaterial. *See e. g., Magnus v. Cock Robin Ice Cream Co.*, 52 Ill.App.3d 110, 9 Ill.Dec. 769, 367 N.E.2d 203 (1st Dist. 1977). The same rules apply in an action under § 1983. *Hunter v. Clardy*, 558 F.2d 290 (5th Cir. 1977); *Beauregard v. Wingard*, 362 F.2d 901 (9th Cir. 1966).

■ Buches' complaint, and the resulting arrests and prosecution, charged disorderly conduct by Terket, in violation of Ill.Rev. Stat. ch. 38, § 26–1(a)(1).[2] As this court has noted, "[t]he emphasis of the statute is upon the tendency of the conduct to disturb others and to provoke disruptions of public order and upon the unreasonableness of the activity when viewed in the context of the surrounding circumstances." *United States v. Woodard*, 376 F.2d 136, 139 (7th Cir. 1967). According to the affidavits and police documents submitted with the defendants' motion for summary judgment, in addition to sending gifts and taping love notes to Buches' mailbox, Terket followed her to an ice skating rink where he "cornered" and "threatened" her; he frequently followed her taxi-cab in his car, as she returned home from work after mid-night; and at least once he swerved his car in front of the cab in which Buches was riding. Nowhere in the record has Terket ever denied doing any of these things.[3] The district court correctly found that these undisputed facts gave the defendants probable cause to believe Terket could be found guilty of disorderly conduct. Therefore, the defendants were entitled to judgment as a matter of

---

1. Terket did not allege any additional facts, *e. g.*, use of excessive force during the arrests or unduly harsh conditions of confinement, which would distinguish his claim from the simple state law causes of action mentioned in the text. Also, to the extent that the complaint relies on injury to Terket's reputation as a deprivation of liberty, it fails to state a claim at the outset. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

2. Section 26–1(a)(1) provides:
   (a) A person commits disorderly conduct when he knowingly:

(1) Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace; . . .

3. Terket's affidavit in opposition to summary judgment is devoted to attempting to raise an issue of fact as to the relationship between Lund and Buches and to establishing a malicious motive for Lund's actions. Remarkably, his own affidavit states that several months after Buches' complaint and Terket's arrest, Terket was watching Buches' apartment at 1:30 a. m. and even went behind the building and looked into her windows.

law and the grant of summary judgment was proper.[4]

## II.

The remainder of Terket's arguments on appeal challenge the district court's award of attorneys' fees to the defendants. The district court granted the motion for summary judgment on July 18, 1979. On July 27, the defendants moved for an award of attorney's fees under 42 U.S.C. § 1988, asserting that Terket's action was "meritless, frivolous or unreasonable." On August 1, the district court entered an order clarifying the fact that its earlier rulings resolved all of the issues in the case and should be considered a final disposition. On August 17, Terket filed a notice of appeal from "the final judgment entered in this action on the 18th day of July, 1979." He filed no response to the defendants' motion for attorneys' fees. On September 10, the district court entered its order awarding attorney's fees to the defendants and "assess[ing] said fees against plaintiff Terket as costs in the amount of $1,000." No notice of appeal was filed from this order.[5]

## A.

■■■ Although the issue is not raised by the parties, we must consider *sua sponte*

whether we have jurisdiction to review the order awarding attorneys' fees. *See Rice v. Rice Foundation*, 610 F.2d 471, 474 (7th Cir. 1979). A timely notice of appeal from a judgment or order is mandatory and jurisdictional. *Browder v. Director, Ill. Dept. of Corr.*, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978). Since no notice of appeal was filed from the September 10 order awarding attorneys' fees, it would appear that this court is without jurisdiction to consider the propriety of that order. *Cf. Washington v. Bd. of Educ.*, 498 F.2d 11, 15 (7th Cir. 1974) (separate notice of appeal required for ruling on motion under Rule 60(b), Fed.R.Civ.P.).

Doubt about this result is created, however, by this court's decision in *Swalley v. Addressograph-Multigraph Corp.*, 168 F.2d 585, 587 (7th Cir. 1948), *cert. denied*, 335 U.S. 911, 69 S.Ct. 481, 93 L.Ed. 444 (1949). There the court held that a district court order reviewing the taxing of costs by the clerk and entered after the underlying judgment had been appealed "related back to that judgment and became a part thereof." *Id.* The court therefore held that the appeal from the underlying judgment "brought up with it" the order re-taxing costs. *Accord* 6 Moore's Federal Practice ¶ 54.70[5], p. 1316 n. 14 (2d ed. 1976) (citing

4. Since the actions which the defendants allegedly conspired to take against Terket did not violate his constitutional rights, the conspiracy allegations add nothing to the merits of his cause of action.

5. On October 18, 1979, the defendants filed a motion in this court to dismiss Terket's appeal for failure to prosecute. The next day this court notified counsel for Terket to respond to the defendants' motion by November 2. No response was filed and on November 20, the court issued a rule to show cause why the appeal should not be dismissed for failure to prosecute under C.R. 8(b)(1). On December 3, 1979, counsel for Terket filed a memorandum responding to the defendants' motion to dismiss and the rule to show cause. The memorandum related the facts surrounding the district court's award of attorneys' fees. Counsel requested time to file a supplemental record regarding those facts and to prepare a brief "including argument and authorities relative to whether the trial judge had jurisdiction to enter an award of $1,000 after the appeal had been filed." On December 6, this court denied the

defendants' motion to dismiss, discharged the rule to show cause, and granted Terket's motion for an extension of time to supplement the record and file his brief.

So far as the record shows, the first indication Terket gave to the district court that he challenged the award was his Motion to Certify Supplemental Record, received by the district court on November 6 and filed on November 13, 1979. The first mention of Terket's position that the district court lost jurisdiction to award attorneys' fees when the summary judgment notice of appeal was filed came in his memorandum opposing the defendants' motion for a rule to show cause why the attorneys' fees award should not be enforced. That memorandum was filed on November 20. Finally, Terket made clear his intent to appeal the attorneys' fees order in his December 3 memorandum in this court, described above. Thus no indication of an intent to appeal was filed in either court within 30 days of the September 10 order awarding attorneys' fees.

*Swalley* ). Since § 1988 makes attorneys' fees taxable as costs, it may be argued that *Swalley* would allow Terket's present challenge to the September 10 order within his appeal from the summary judgment.

The rule in *Swalley* does not necessarily apply to attorneys' fees, however. As the courts have noted, the decision to award attorneys' fees under § 1988 is different from the routine assessment of costs normally made by the court clerk. *E. g., Barrett v. Kalinowski*, 458 F.Supp. 689, 708 (M.D.Pa.1978); *cf. Wright v. Jackson*, 522 F.2d 955, 957 (4th Cir. 1975) (pre-§ 1988 case). In a related area, we have held that an award of attorneys' fees under the "fund" theory is a collateral order, subject to an interlocutory appeal. *Hidell v. Int. Diversified Investments*, 520 F.2d 529 (7th Cir. 1975); *Swanson v. Amer. Consumer Industries, Inc.*, 517 F.2d 555 (7th Cir. 1975); *but see Richerson v. Jones*, 551 F.2d 918 (3d Cir. 1977) (attorneys' fees award under Title VII not sufficiently collateral to allow interlocutory appeal). Regardless of whether an award under § 1988 is collateral enough to permit an interlocutory appeal, it seems clear that it involves an exercise of the district court's judgment requiring an examination of factors beyond the issues decided with the merits of the suit and also different from the largely ministerial task of taxing the traditional items of costs. *See Muscare v. Quinn*, 614 F.2d 577, 579–80 (7th Cir. 1980). Thus the award of attorneys' fees under § 1988 is a decision distinct from the decision on the merits and from the normal taxing of costs. We conclude that when an award of attorneys' fees is made after judgment is entered on the merits, a notice of appeal specifying an appeal from the order awarding attorneys' fees is required. Therefore, the district court's September 10 order awarding fees against Terket is not properly before us and may not be disturbed.

### B.

▪ Despite the lack of jurisdiction over the award in this case, we find it appropriate, in the exercise of our supervisory powers, to consider the propriety of the procedure followed by the district court in this case in awarding attorneys' fees under § 1988. *Washington v. Bd. of Educ., supra*, 498 F.2d at 15–16.

Terket has argued that the district court had no power to award attorneys' fees against him after the notice of appeal was filed from the summary judgment. That argument is based on the general rule that the filing of a notice of appeal divests the district court of jurisdiction. *See* 9 Moore's Federal Practice ¶ 203.11 (2d ed. 1980). The Fourth Circuit has applied this general rule to attorneys' fees awards and held that the district court should either award attorneys' fees before the appeal is taken or wait until after the appeal is decided. *Wright v. Jackson, supra*, 522 F.2d at 957–58.

In analyzing the result reached by the court in *Wright*, we note first that the general rule divesting the district court of "jurisdiction" upon the filing of a notice of appeal does not refer to the court's jurisdiction under any statute or mandatory rule. "It is a judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time. It should not be employed to defeat its purposes not to induce needless paper shuffling." 9 Moore's Federal Practice ¶ 203.11, p. 3–45 n. 1 (2d ed. 1980).

In keeping with the rationale for the rule, we have announced that when an appeal is taken before a district court has ruled on a motion for relief from its judgment under Rule 60(b), Fed.R.Civ.P., the district court should consider the motion and either deny it or indicate its inclination to grant the motion. If the district court denies the motion, that ruling can be appealed and perhaps consolidated with the pending appeal. If the district court indicates it is inclined to grant the motion and vacate its judgment, the case can be remanded and an unnecessary appeal would be avoided. *Washington v. Bd. of Educ., supra; accord Puerto Rico v. SS Zoe Colocotroni*, 601 F.2d 39 (1st Cir. 1979) (and cases cited therein). *See also United States v. Ellison*, 557 F.2d

128, 131–32 (7th Cir. 1977) (adopting similar procedure under Rule 33, Fed.R.Crim.P.).

We believe that the rationale of *Washington* should be applied to post-judgment motions for attorneys' fees. It is true that in ruling on the issue of attorneys' fees a district court must take into account both the relative merit of the plaintiff's case and the result obtained. *See Muscare v. Quinn, supra.* But this is not the sort of reconsideration of the merits which could lead to altering the substantive judgment or in any way interfere with the pending appeal. The district court merely takes the merits into account, along with many other factors, in making a discretionary decision entirely distinct from the underlying judgment. Thus the policy against two courts treating the same issues concurrently does not require withdrawing the district court's power to decide attorneys' fees motions while an appeal is pending.

The Fourth Circuit in *Wright v. Jackson, supra,* recognized that the slightly different policy against piecemeal appeals also underlies the rule divesting district court jurisdiction. The court then concluded that, since a district court's award of attorneys' fees depends in part on "the correctness, vel non, of its substantive order . . . it must make that assessment while the merits are before it, either prior to an appeal, or on remand after they have been settled." *Id.,* 522 F.2d at 957–58. We find ourselves constrained to disagree. Indeed, in the majority of cases, piecemeal appeals may well be caused by preventing district courts from ruling even on prompt post-judgment fee motions after a notice of appeal is filed. This case is a good example. Here the defendants filed their motion for attorneys' fees less than ten days after the district court granted their motion for summary judgment. But since Terket was required to file his notice of appeal within thirty days of the judgment, the court would have been forced to rule on the motion in less

than twenty days, under *Wright.* Since these motions will generally require a response from the opposing party and may require a full hearing, it is impractical to expect the district court to rule so quickly. Moreover, the opposing party would be empowered to prevent a decision simply by filing a notice of appeal promptly after judgment is entered. If the district court is unable to decide the attorneys' fees issue while the appeal is pending, it will often be forced to wait some months before the appeal is decided and then return to the case and attempt to recall the merits of the parties' positions, the reasonableness of the attorneys' time sheets, the competence of the attorneys, etc.—all matters with which the court would be familiar soon after its initial judgment. Furthermore, the district court's ruling on the attorneys' fees motion might then be appealed, requiring a similar duplication of effort, possibly by different judges, at the appellate level.

Conversely, if the district court may proceed after the substantive judgment is appealed, it may be able to decide the attorneys' fees issue before the pending appeal has been fully briefed and argued. Then, if the order on attorneys' fees is properly appealed, that appeal could be consolidated with the pending appeal for consideration by this court. In sum, we believe the rule in *Wright* is more likely to cause delay and wasted effort than prevent it. Therefore, district courts in this circuit should proceed with attorneys' fees motions, even after an appeal is filed, as expeditiously as possible. Any party dissatisfied with the court's ruling may then file an appeal and apply to this court for consolidation with the pending appeal of the merits.[6]

For the reasons given above, the judgment of the district court granting the defendants' motion for summary judgment is affirmed; the appeal from the district court's order awarding attorneys' fees is dismissed for lack of appellate jurisdiction.

---

**6.** We note that previous cases have followed the procedural course suggested here without discussing the issue raised by Terket and *Wright v. Jackson, supra. See e. g., Konczak v. Tyrrell,* 603 F.2d 13 (7th Cir. 1979); *Taylor v.*

*Phillips Industries, Inc.,* 593 F.2d 783 (7th Cir. 1979). In those cases the court was able to consolidate the separate appeals and dispose of all of the issues at once.