John M. BUHR, Plaintiff,

v.

**RELIANCE STANDARD LIFE INSURANCE, a corporation, Defendant.**

Civ. A. No. 82–C–1138.

United States District Court,
E.D. Wisconsin.

Aug. 30, 1984.

---

Jeffrey E. Schelble, Dubin, Balistreri & Fuchs, Ltd., Milwaukee, Wis., for plaintiff.

Robert D. Scott and Rebecca Leair, Frisch, Dudek & Slattery, Ltd., Milwaukee, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action to recover a sum of money allegedly due as a reward for services. Plaintiff John M. Buhr, a Wisconsin resident, alleges that he provided information to defendant Reliance Standard Life Insurance ("Reliance"), a Pennsylvania corporation, pursuant to Reliance's offer of a reward therefor. Plaintiff seeks a judgment in the amount of $400,000. Reliance has moved for summary judgment. The motion will be granted.

Although certain controversies remain, the following material facts are not in dispute. In October 1980, a collection of items known as the Faberge Collection were on display at the Paine Art Center and Arboretum in Oshkosh, Wisconsin. Buhr and his wife visited the museum on October 21, 1980, at which time Buhr saw an acquaintance of his, a Mr. John Manelli. Buhr was surprised to see Manelli at the exhibition. Buhr had heard that Manelli

was a jewel thief and an unsavory character.

The two men engaged in conversation. Manelli informed Buhr that he was living in Minneapolis, and made a remark to the effect that he was in Oshkosh to visit a friend who was fishing. The remark made Buhr suspicious because Manelli did not seem to be the sort of person who was interested in fishing. Buhr suspected that Manelli was casing the premises in preparation for a theft of the Faberge Collection. He observed Manelli inspecting one of the doors at the museum as if to determine whether there was any wire around it. Buhr did not communicate his suspicions to any museum personnel. He and his wife finished their view of the display, went shopping, and returned to their home in DePere. Upon their return to DePere, they dined at the Village Gate restaurant. At this time, Buhr told the restaurant owner what he had seen at the museum and, without mentioning Manelli's name, told the owner that if anything happened to the collection, he would probably know who did it.

In the early morning of October 22, 1980, thieves broke into the Paine Art Center, taking part of the Faberge Collection and some other gems that were being displayed there. News of the theft was televised at noon on October 22. The newscast made no mention of any reward; it simply sought information from anyone who had it. Buhr heard the broadcast but did nothing in response to the request for information. He was concerned about his family's safety.

On the same day, a person who had overheard Buhr's conversation with the owner at the Village Gate met with Mr. John T. Aziere, an F.B.I. agent, and related what he had heard. This individual gave Buhr's name to Aziere, who then contacted Mrs. Buhr at her place of employment. He told Mrs. Buhr to have her contact a second F.B.I. agent, a Mr. Bruce Rupert.

Buhr met with Rupert that evening, at which time Buhr related what he had seen at the museum. He accurately described Manelli to Rupert, but referred to him as "Mr. J." He knew Manelli's name, but did not disclose it to Rupert out of concern for his family's safety.

Two days later, F.B.I. agents Aziere and Dale Wierschke visited Buhr at his home. They went over information Buhr had given and showed him photographs, which included photographs of Manelli and one Steve Manson. Buhr identified the photographs of Manelli and Manson, although he did not know that Manson was Manelli's associate.

During this time, the Planet Insurance Company, which is a member of the Reliance group of insurance companies but is an entity legally separate from Reliance, and which was the insurer of the items taken from the museum, hired a private investigator named John McMillan to investigate the incident. McMillan discussed the incident with Reliance personnel, personnel from the Paine Art Center, and the law enforcement authorities, and it was determined that a reward should be offered for information leading to the recovery of the stolen items. McMillan was to place an advertisement in the Oshkosh newspaper, but no particular dollar amount was specified.

An advertisement offering a reward in exchange for information was then placed in the October 25–26, 1980, edition of the *Oshkosh Daily Northwestern*. The advertisement did not quote the amount offered but simply provided that a "considerable reward" was "being offered for information leading to the return of the collection taken from the Paine Art Center and Arboretum on Oct. 22, 1980." It further provided that the information would be treated confidentially, and gave two telephone numbers that persons with information could call collect. Buhr saw this advertisement, although he does not recall precisely when. It was the only printed advertisement for a reward that he saw.

During the week of November 10, 1980, the F.B.I. again contacted Buhr to show him more photographs. The F.B.I. then asked Buhr to place a telephone call to Manelli and try to arrange a meeting. Buhr telephoned Manelli's residence and

left a message for Manelli to return his call. The call was never returned. The F.B.I. then gave Buhr $500 for his expenses.

At this time, efforts to recover the stolen items were proving fruitless. The Minneapolis office of the F.B.I. had no contacts with Manelli or anyone close to him, and it had not been positively established that Manelli had stolen the items or even had possession of them. However, on November 15, 1980, progress resumed when an unidentified informant told Oshkosh police that he knew Manelli had stolen the items, knew the other persons involved, and knew where the items were located. Later, in January 1981, about the time Manelli was arrested, an F.B.I. agent contacted Buhr to ask whether his name could be used on a search warrant. Buhr gave his permission provided that the use of his name was absolutely necessary.

In the meantime, in October or November 1980, Buhr had been trying to contact Mr. Ralph Bufano, the curator of the Paine Art Center, by telephone and by letter about getting a reward. Bufano directed Buhr to contact Mr. Harold Rivers at Reliance's Philadelphia office. Rivers is Reliance's vice-president in charge of claims for various projects. After the items had been recovered, Buhr contacted Rivers and discussed his involvement in the investigation of the theft. Rivers verified Buhr's identity with the F.B.I., which informed him that Buhr had cooperated with the government in the investigation. Later, Buhr forwarded to Rivers transcripts of his statements to the F.B.I. Rivers verified these with the F.B.I. The F.B.I. told Rivers that Buhr had been helpful to them. Buhr also contacted McMillan with respect to the reward. Although McMillan was not authorized to offer any money on Reliance's or Planet Insurance Company's behalf, he asked Buhr, "How does $5,000 sound," or words to that effect. McMillan later told Rivers that he quoted this sum to Buhr because he thought it constituted an amount for nuisance value. McMillan had also told F.B.I. agent Wierschke on November 17, 1980, that the insurer of the items was willing to pay $250,000 to recover the

stolen items, and on December 23, 1980, that the insurer was willing to pay $300,-000 to recover the items.

Most of the stolen items were recovered in a buyback transaction at the North Star Inn in Minneapolis, Minnesota, in January 1981. Planet Insurance had put up $300,-000 for the items. Manelli was apprehended later in the same day as the buyback, with $250,000 divided into packets of $100 bills.

The parties dispute the time at which Buhr first learned of the reward. Buhr argues that he first learned of the possibility of a reward from F.B.I. agent Rupert during their first interview on October 22, 1980. However, Buhr also states that Bruce did not tell him who would be offering a reward or what the amount of the reward would be. The defendant, relying on statements by agent Aziere, argues that the F.B.I. had no knowledge that a reward would be offered at the time agent Rupert first interviewed Buhr.

Buhr also contends that during his interview with agent Aziere during the week of November 10, 1980, Aziere told him that the insurer was offering a reward in Minneapolis in an amount equal to ten percent of the value of the items, that this offer referred to someone who served as an intermediary between the party in possession of the goods and the authorities, and that this was an offer separate from that which appeared in the *Oshkosh Daily Northwestern*. Aziere has stated that he does not recall this discussion and denies ever quoting a reward amount to Buhr.

On this motion for summary judgment, Reliance raises four arguments: (1) Buhr never accepted the reward offer because he provided information before the offer was published; (2) the reward notice published in the newspaper cannot be the basis of an enforceable agreement because an essential element of such an agreement, the amount, was not specified; (3) Buhr's conduct did not constitute substantial performance; and (4) Buhr has mistakenly sued the wrong insurance company, against whom he has no claim.

Summary judgment is appropriate when there exists no dispute of material fact. However, the mere existence of factual disputes does not mandate denial of a motion under Fed.R.Civ.P. 56 when resolution of those disputes would have no bearing on the outcome of the case. The factual dispute must be material to the disposition of the case. *Terket v. Lund*, 623 F.2d 29 (7th Cir.1980).

Under Wisconsin law, notices of rewards are regarded as offers that can form the basis of contracts. In *Zwolánek v. Baker Mfg. Co.*, 150 Wis. 517, 137 N.W. 769 (1912), the Wisconsin Supreme Court held that a binding contract depended on the existence of a valid offer, and an acceptance of the offer, including its terms and conditions, by a performance of the services requested in the offer before the offer lapses or is revoked. A mere offer to pay a reward is a conditional promise on the part of the offeror and not a consummated contract.

In the present case, there is no dispute that it was Planet Insurance, and not Reliance, that placed the advertisement in the *Oshkosh Daily Northwestern.* Planet Insurance is the offeror, yet it is not a party to this lawsuit. The only defendant named in the complaint is Reliance, which is legally separate from Planet Insurance. Because Reliance did not make the alleged offer, summary judgment must be granted in its favor.

In opposition to the present motion, plaintiff states that the pleadings should be amended. If that is so, then plaintiff should move to amend the complaint by substituting Planet Insurance for Reliance. He has not done so. Planet Insurance has never been served, nor has it appeared in this action, nor is there sufficient information in the file to satisfy the Court that it has notice of this action. It follows that the complaint must be dismissed.

### ORDER

IT IS THEREFORE ORDERED that defendant's motion for summary judgment is granted.

IT IS FURTHER ORDERED that this action is hereby dismissed.