**Joseph MARK, Plaintiff-Appellant,**

v.

**Daniel FURAY, Richard J. Kooyenga and the City of Blue Island, a municipality, Defendants-Appellees.**

**Joseph MARK, Plaintiff-Appellant,**

v.

**John RITA, Lawrence Petta and Patricia Maly, Defendants-Appellees.**

Nos. 83–3059, 83–3060.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1984.

Decided Aug. 8, 1985.

Abraham N. Goldman, Abraham N. Goldman & Assoc., Chicago, Ill., for plaintiff-appellant.

Linda L. Listrom, Jenner & Block, Chicago, Ill., for defendants-appellees.

Before CUDAHY, COFFEY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiff Joseph Mark appeals from judgments entered against him in two closely related suits brought under 42 U.S.C. § 1983 (1982) in which he alleges that a conspiracy existed among several officers and employees of the City of Blue Island to charge him falsely with felony theft, and thereby to deprive him of liberty without due process of law in violation of the Fourteenth Amendment. The district court granted summary judgment to the defendants in No. 83–3059, and granted the defendants' motion to dismiss for failure to state a claim in No. 83–3060. The cases have been consolidated for appeal, and we now affirm in No. 83–3059 and reverse and remand in No. 83–3060.

## I.

Despite the long and rather bizarre series of accusations made by the plaintiff, the legally relevant facts in both cases can be summarized briefly. Joseph Mark is a retired railroad conductor with a long history of active involvement in the Democratic Party in the City of Blue Island, including work for Mayor John Rita and City Attorney Lawrence Petta, who are defendants in No. 83–3060. On May 10, 1979, Mark was arrested on a charge of felony theft by Blue Island police officers acting under the direction of Lieutenant Daniel Furay and Chief of Police Richard Kooyenga, who are defendants in No. 83–3059. The theft charge alleged that Mark had stolen four large and valuable wooden tables that were missing from a building in Blue Island owned by Frank Neldon. The owner of the tables was Angelo Garetto, who rented space in the rear of Neldon's building to store various items for use in his pizza parlors. While Garetto was using the rear of the building for storage, Neldon allowed the local Democratic Party to use the front of the building for Mayor Rita's election campaign.

All of the parties agree that after the tables were taken from Neldon's building, they ended up in the apartment of Patricia Maly, a housekeeper employed by the City of Blue Island and the remaining defendant in No. 83–3060. The parties disagree, however, about how the tables were taken to Maly's apartment. Mark alleges that Rita and Petta, who he claims were intimately involved with Maly, took the tables to her apartment. Mark admits that he assisted Rita and Petta in taking the tables, but insists that he thought the tables would be paid for by the local Democratic Party organization. Finally, Mark alleges that all of the defendants knew that the theft charge against him was false, but nevertheless conspired to have him charged and

arrested in order to discredit him and prevent him from disclosing Rita, Petta, Furay, and Kooyenga's involvement in payoffs and other corrupt practices.

The defendants' theory of the case, on the other hand, is that Mark was arrested pursuant to a valid warrant supported by sufficient facts to establish probable cause to believe that he was guilty of stealing the tables. According to the deposition testimony of Furay, Kooyenga, and Maly, introduced in No. 83–3059, Maly initially contacted Furay and Kooyenga, told them that Mark had brought the stolen tables to her apartment, and further agreed to testify against Mark in connection with the incident. Furay then removed the tables from Maly's apartment and took them to police headquarters, whereupon he phoned Neldon to question him about the tables. Neldon confirmed that Garetto had previously complained about tables being missing, and later that day Neldon traveled to police headquarters, where he identified the tables as the ones that were missing. Neldon also told Furay that he would sign a complaint for theft of the tables.

Furay later presented this information to an assistant state's attorney, who approved a felony theft complaint against Mark. The assistant state's attorney, along with Furay and Neldon, then appeared before a judge in the Circuit Court of Cook County, where Neldon swore to and signed the complaint. The judge approved a felony theft warrant, and Furay accordingly had Mark arrested. The charges against Mark were ultimately dismissed, however, after Maly refused to appear and testify against him.

With this general background in mind, we will proceed to a specific discussion of each of the cases on appeal.

## II.

### A. No. 83–3059, Mark v. Furay

In this suit against Furay, Kooyenga, and the City of Blue Island, the district judge had a fairly substantial amount of evidentiary material upon which to base her decision on the defendants' summary judgment motion. This material included the depositions of Mark, Furay, Kooyenga, Maly, Neldon, and Garetto, along with an affidavit from Mark submitted specifically in opposition to the summary judgment motion. The district judge declined to consider an unsigned statement given by Patricia Maly to the plaintiff's attorneys prior to her deposition testimony. In this statement, which was also attached as an exhibit to Maly's deposition, Maly stated that she did not actually see Mark bring the tables to her apartment, and that Furay led *her* to believe that the tables were stolen rather than vice versa. Maly recanted portions of this statement in her subsequent deposition, stating that she had failed to tell the whole truth out of fear that Mark would harm her physically, as she alleged he had done in the past. The district judge refused to consider the statement on the grounds that it was not taken pursuant to formal discovery, that the defendants were not given an opportunity to be present at the time that it was taken, and that it was unsigned.

Based on the remaining evidence in the record, the district court concluded that the undisputed facts showed that Mark's arrest on the felony theft charge did not deprive him of his liberty without due process of law. The court properly began with the proposition that under the Supreme Court's decision in *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), a person who is arrested pursuant to a facially valid warrant, as Mark clearly was, generally has no claim for an unconstitutional deprivation of liberty under section 1983. The Court held in *Baker* that a plaintiff who was arrested pursuant to a valid warrant that was actually intended for his brother had no section 1983 claim against the sheriff for his failure to investigate whether the warrant was based on mistaken identity. *Id.* at 146, 99 S.Ct. at 2695. Moreover, as the district court also observed, Mark cannot claim that his arrest violated his constitutional rights merely because the defendants had malicious motives for arresting him. This

court has consistently held that the existence of probable cause for an arrest totally precludes any section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution, regardless of whether the defendants had malicious motives for arresting the plaintiff. *Terket v. Lund,* 623 F.2d 29, 31 (7th Cir.1980). *Accord Friedman v. Village of Skokie,* 763 F.2d 236, 239 (7th Cir.1985); *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1344 n. 10 (7th Cir.1985).

In *Terket,* the plaintiff alleged that one of the police officers who arrested him was a friend of the complaining witness, and that this officer maliciously induced the witness to sign a disorderly conduct complaint against the plaintiff. In reviewing the district court's grant of summary judgment to the defendants, we began by noting that the "existence of disputed facts" as to whether the officer maliciously induced the witness to sign the complaint were "not enough, however, to defeat a motion for summary judgment." *Terket,* 623 F.2d at 31. Rather, we emphasized that "[t]he disputed facts must also be material to the legal issues in the case." *Id.* Finding no disputed facts concerning the existence of probable cause to believe that the plaintiff was guilty of disorderly conduct, we affirmed the summary judgment for the defendants, holding that "proof of the actual existence of probable cause is a bar to the action. If the defendants had probable cause to believe that [plaintiff] was guilty of disorderly conduct, their allegedly malicious motives are immaterial." *Id.*

Mark attempts to avoid the application of *Baker* and *Terket* by arguing that the evidence in the record is adequate to create a genuine issue of material fact as to whether Furay and Kooyenga procured the arrest warrant based on material representations that they knew to be false, rather than based on probable cause. Mark therefore seeks to bring his case within the rule announced by this court in *Whitley v. Seibel,* 613 F.2d 682 (7th Cir.1980), *cert. denied,* 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982). In *Whitley,* we held

that the plaintiff could establish an unconstitutional deprivation of liberty by showing that the defendant police officer had procured retroactive authorization to arrest the plaintiff on felony charges from an assistant state's attorney by misrepresenting or omitting certain material facts. The material facts in *Whitley* were that a different assistant state's attorney had previously refused to authorize an arrest warrant for the plaintiff on the same charges because one of the crime victims had identified someone else as the perpetrator, and because the plaintiff claimed an alibi. *Id.* at 684. Despite his inability to determine the validity of the plaintiff's alibi, the defendant arrested the plaintiff on the charges, and sought retroactive authorization from a second assistant state's attorney. *Id.* The defendant, however, failed to inform the second assistant state's attorney of the plaintiff's claimed alibi, and stated only that another assistant state's attorney had earlier refused to authorize an arrest because of some identification problems that had since been resolved. *Id.*

Under these circumstances, we distinguished the Supreme Court's decision in *Baker* on two bases. First, we noted that in *Whitley,* unlike in *Baker,* "there was no valid warrant executed" when the defendant initially made the arrest. *Whitley,* 613 F.2d at 686. Second, we found that a "more important" factor distinguishing *Baker* was that in *Whitley* "the evidence ... may be interpreted to suggest that the defendant intentionally misled and misrepresented the facts and circumstances of the case to the assistant state's attorneys involved." *Whitley,* 613 F.2d at 686. Thus, we concluded: "If the officer undertakes to make decisions which are not his to make and then intentionally misleads those who do have the ultimate authority to authorize the arrest, the officer may be found to have deprived the arrestee of his liberty without due process of law." *Id.*

The district court recognized the *Whitley* rule, but nevertheless concluded that Mark had failed to bring his case within the rule: "[a] plaintiff could allege and prove that

the arresting officer procured an arrest warrant that he knew to be based on false information ... [b]ut the undisputed facts of this case are that the arrest warrant was based on probable cause." *Mark v. Furay*, No. 79 C 2813, slip op. at 5 (N.D.Ill. Sept. 21, 1982). The district court found from its review of the record that the defendants' version of the events leading up to the arrest was basically undisputed by the plaintiff.

Noting that Mark's deposition and affidavit were filled with hearsay statements of non-parties whose depositions had not been taken, the court found that when Mark's statements

> are stripped to the facts based on the plaintiff's personal knowledge to which he could properly testify, they are insufficient to create disputed questions of material fact. Although plaintiff's statements are the makings of a steamy novel, whether fictional or documentary, they are not a good and sufficient response to the motion for summary judgment.

*Id.* at 3.

On appeal, Mark cites to numerous passages in the record that he claims create an issue of material fact concerning whether Furay and Kooyenga knew that the theft charge was false, and thus whether they lacked probable cause for Mark's arrest. Mark relies heavily on his own deposition and affidavit, in which he alleges that his arrest was the result of a disagreement with Rita, Petta, and Furay over the discharge of another Blue Island police officer. According to Mark, this police officer had conducted an investigation that revealed the involvement of Furay and others in payoffs for allowing prostitution and other illegal activities. Mark states that Rita, Petta, and Furay had this police officer "framed" on a charge of threatening Rita, and that when Mark refused to go along with this frame-up, Rita and Petta threatened to frame him as well. Finally, Mark charges that the defendants followed through on their threat by falsely charging him with stealing the tables, and further

alleges generally that Furay admitted this "frame-up" when Mark was arrested. As Mark states in paragraph 19 of his affidavit, "While I was being fingerprinted Furay said we can get you off easy, wise guy, if you forget about the payoffs I took and the payoffs I made."

Mark also points to various statements made by others as support for his theory of a frame-up. For example, he cites to portions of the deposition and the unsigned statement given by Maly wherein Maly quoted Furay and Kooyenga as expressing a desire to discredit Mark in order to prevent him from destroying the incumbent political party of Blue Island, and wherein Maly stated that prior to Mark's arrest on the theft charge Furay and Kooyenga had persuaded her to sign a criminal complaint against Mark for telephone harassment. Contending that the district court erred in refusing to consider Maly's unsigned statement, Mark further claims that the discrepancies between the statement and Maly's deposition testimony create an issue of fact as to whether the defendants had probable cause to arrest him. He stresses that while Maly testified in the deposition that she saw Mark bring the tables to her apartment, she said in the statement that she found the tables in her apartment and only assumed that Mark had brought them there; and that while she stated in the deposition that she initially contacted Furay to express concern that the tables were stolen, she said in the statement that she had no suspicion that they were stolen until Furay told her that they were listed as stolen property on a "hot sheet."

After carefully reviewing the entire record before the district court on the defendant's summary judgment motion, giving special attention to the portions quoted by Mark, we agree with the district court that Mark failed to raise any genuine issue of material fact to show that his arrest on the theft charge deprived him of liberty without due process of law.

Mark has simply failed to dispute the defendants' evidence showing that there was probable cause to arrest him for steal-

ing the tables. First, regardless of whether Maly's deposition is considered alone or in combination with her prior unsigned statement, it is undisputed that Maly told Furay that Mark brought the tables to her apartment. It is unnecessary for us to decide whether the district court should have considered the prior statement, because even in that statement Maly said she told Furay that the tables were a "gift" from Mark. Although Maly did not indicate in the prior statement that she had actually seen Mark carry the tables into her apartment, this does not create an issue of material fact as to whether Furay had probable cause to believe that Mark stole the tables when Maly agrees that she told Furay that Mark had brought the tables to her apartment.

Second, it is equally undisputed that Neldon identified the tables as the ones that were missing from his building, and subsequently swore out a complaint against Mark for the theft. When Maly's statement that Mark brought the tables to her apartment is combined with Neldon's identification of the tables and swearing of a complaint, it is clear that the defendants had probable cause to arrest Mark for theft. Because of this combined evidence connecting Mark and the stolen tables, the discrepancy between Maly's deposition and her prior statement concerning whether she approached Furay or he approached her first about the tables being stolen does not create an issue of material fact. In either event, Furay had sufficient evidence to constitute probable cause before the warrant was procured.

Third, and most importantly, Mark has failed to raise an issue of material fact as to whether the defendants actually knew that the theft charge was false, and therefore misrepresented facts to the assistant state's attorney and/or the judge as prohibited by *Whitley*. He has introduced ample evidence, primarily through his own testimony and that of Maly, establishing a question of fact as to whether the defendants desired to discredit him. For example, the statements that Mark alleges Furay made at the time of Mark's arrest support Mark's assertion that Furay harbored malice toward him. This evidence, however, is irrelevant to the question of whether there was probable cause to arrest Mark for the theft, and under *Terket*, it is this question that determines whether Mark can establish an unconstitutional deprivation of liberty.

Under these circumstances, we must affirm the district court's grant of summary judgment to the defendants on Mark's claim that his arrest deprived him of liberty without due process of law. Since Mark cannot establish an unconstitutional deprivation of his liberty, his separate claim for injury to his reputation resulting from the arrest fails to state a claim under section 1983. *See Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Bone v. City of Lafayette*, 763 F.2d 295, 297–98 (7th Cir.1985); *Terket*, 623 F.2d at 31 n. 1.

Finally, we believe that Mark's failure to create a disputed issue of material fact concerning the legality of his arrest dictates a grant of summary judgment to the City of Blue Island as well as to the individual defendants Furay and Kooyenga. While we note that the district court concluded that a grant of summary judgment to the City was proper on the ground that Mark had not sufficiently shown any policy or practice by the City that caused a deprivation of his constitutional rights, *see City of Oklahoma City v. Tuttle*, —— U.S. ——, 105 S.Ct. 2427, 2433–34, 85 L.Ed.2d 791 (1985), *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), we find it unnecessary to reach that issue here. The question of whether a municipality *caused* a constitutional deprivation does not even arise absent proof that a deprivation in fact occurred. *See City of Oklahoma City*, 105 S.Ct. at 2433 ("Having established a deprivation of a constitutional right ... respondent still must establish that the city was the 'person' who 'cause[d] [Tuttle] to be subjected' to the deprivation."); *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th

Cir.1981) ("under *Monell*, the crucial question is whether the unconstitutional acts complained of were *caused* by a policy or custom of the municipality"). The defendants have demonstrated by undisputed facts that Mark suffered no deprivation of a constitutional right in this case, so we affirm the grant of summary judgment to all of the defendants on this basis.

### B. No. 83–3060, Mark v. Rita

In this suit against Rita, Petta, and Maly, Mark makes the same allegations that he made in *Mark v. Furay* concerning the supposed conspiracy to charge him falsely with felony theft, while adding new allegations stating that the defendants further conspired to charge him falsely with telephone harassment and directed Maly, Furay, and Kooyenga to give perjured testimony in *Mark v. Furay*. In his complaint, Mark charges that Rita, Petta, and Maly joined in a conspiracy with Furay and Kooyenga to violate his constitutional rights, and describes several specific meetings during which the co-conspirators allegedly formulated their plans to commit various unconstitutional acts against him.[1] With respect to the theft charge, Mark alleges that Furay, acting under the direction of Rita and Petta, made false representations to Neldon that led him to sign the theft complaint against Mark. Furthermore, Mark alleges in a critical paragraph of the complaint that:

> In furtherance of the conspiracy and agreement ... defendants RITA and PETTA caused and directed FURAY and KOOYENGA to cause a warrant to issue and be served against the plaintiff ... [for felony theft] based upon the false charges filed by Frank Neldon. That at the time of said service, defendants, and their co-conspirators, and each of them, individually, jointly, and severally, did know that the charges contained therein

were false, lacked probable cause, legal justification, and were malicious.

Unlike *Mark v. Furay*, the district court decided this case solely on the pleadings on a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Thus, the voluminous depositions and other materials submitted in *Mark v. Furay* were not considered by the court in deciding this case. Rather, the court held that Mark failed to state a claim under section 1983 because the defendants' allegedly unconstitutional conduct did not occur "under color of state law:"

> The allegations regarding defendants Rita and Petta taking certain tables and telling the police that the tables could be used to file a false charge against the plaintiff, and causing Furay to make false statements to Neldon, and the allegations regarding defendant Maly's action of giving false testimony and making a false charge against the plaintiff, do not involve actions taken by these defendants in their official capacities. They seem clearly to be private actions, possibly providing the basis for a tort claim under state law, but not a sufficient basis for a Section 1983 action.

*Mark v. Rita*, No. 82 C 1715, slip op. at 3 (N.D.Ill. Oct. 24, 1983).

Although we have no basis for questioning the district court's well-reasoned analysis concerning why the individual acts of the defendants were not committed under color of law, we must nevertheless reverse and remand on a ground that, while argued by the plaintiff below and on appeal, was not explicitly addressed by the district court. As the Supreme Court has repeatedly held: "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that an accused be an officer of the State. It is enough that he is a willful participant

---

**1.** Mark added more specific allegations concerning the conspiracy in his First Amended Complaint, which was filed after the district court dismissed his original complaint for failure to include factual allegations suggesting a meeting

of the minds of the defendants accused of conspiring against him. Our opinion discusses only the First Amended Complaint, since it was upon this pleading that the motion to dismiss was decided.

in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966)). *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941, 102 S.Ct. 2744, 2756, 73 L.Ed.2d 482 (1982); *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). Because Mark's complaint in clear and specific terms alleges that Rita, Petta, and Maly (who the district court held were acting as private parties rather than as state officials) were engaged jointly in a conspiracy with Furay and Kooyenga (who were acting under color of law, at least as to their involvement in the procuring and service of the theft warrant), the complaint cannot be dismissed on the ground that it fails to meet the "under color of law" requirement of section 1983.

We extensively reviewed the principles governing the liability of private parties under section 1983 for acting jointly with state actors in our recent decision in *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352–53 (7th Cir.1985). As we explained in *Moore*, "Private parties have been found subject to liability under § 1983 when engaged in a conspiracy with one or more parties acting under the color of state law.... In order to establish a conspiracy, the plaintiff must demonstrate that the state officials and the private party somehow reached an understanding to deny the plaintiffs their constitutional rights." *Id.* at 1352. In *Moore*, the plaintiff alleged a conspiracy between a restaurant owner and several local sheriffs to arrest any person accused of a crime or "fingered" by the owner without a formal charge and regardless of whether probable cause existed for the arrest. *Id.* In considering this allegation, we noted that "providing false information to an arresting officer is not, by itself, sufficient to state a claim against the private party under § 1983." *Id.* *See also Winterland Concessions Co. v. Trela*, 735 F.2d 257, 262 (7th Cir.1984) ("a private misuse of a statute or procedure ... does not describe conduct which is actionable under § 1983"). Thus, we observed that the

plaintiff in *Moore* could sustain a section 1983 action against the restaurant owner only by presenting evidence of some concerted effort or plan between him and the sheriffs. 754 F.2d at 1352–53. The ultimate question in *Moore* was whether the plaintiff had offered adequate evidence of such a concerted effort in order to withstand the defendant-restaurant owner's motion for summary judgment—not a motion to dismiss on the pleadings alone. After examining the parties' motions and affidavits, we concluded that the plaintiff had not offered sufficient evidence, and therefore that summary judgment was proper. *Id.* at 1353.

If the result in *Mark v. Furay* is any indication, Mark too may ultimately fail to offer sufficient evidence of a conspiracy between the defendants and Furay and Kooyenga to withstand a motion for summary judgment in this case. At this point, however, only Mark's pleadings are before the court; no evidence has been offered, and none has been reviewed by the district court in connection with this case. After reading Mark's complaint, we are compelled to conclude that he has sufficiently alleged a conspiracy between the defendants and Furay and Kooyenga so as to preclude dismissal under Rule 12(b)(6).

First, Mark's allegations concerning the existence of the conspiracy itself are sufficiently specific to avoid dismissal. Indeed, the district court, which had earlier granted a motion to dismiss Mark's original complaint with leave to amend because of inadequate conspiracy allegations, did not dismiss the present complaint for insufficient allegations of the conspiracy itself. Second, Mark has specifically charged, as in the critical paragraph of the complaint quoted above, that the defendants conspired with and actually directed Furay and Kooyenga to cause a felony theft warrant to be issued and served against Mark, notwithstanding the knowledge of all the conspirators that the charge was false. Thus, this is not a case where the plaintiff has alleged only that private parties provided false information to an arresting officer, *see Moore*, 754 F.2d at 1352, but rather is a case where the plaintiff has alleged that

the arresting officers already knew that information was false and nevertheless conspired with the private parties to have the plaintiff arrested. Third, Furay and Kooyenga's actions relative to the theft arrest must be considered to have occurred under color of law, since their actions were made possible because of their authority as law enforcement officers to investigate crimes and make arrests. *See Monroe v. Pape,* 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law.") (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)), *overruled in part on other grounds, Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *A & A Concrete, Inc. v. White Mountain Apache Tribe,* 676 F.2d 1330, 1332–33 (9th Cir.1982) (allegations that sheriff conspired with private parties to put the plaintiffs out of business by serving summonses, complaints, and garnishments that the defendants knew to be invalid state a claim under section 1983).

We must therefore reverse the district court's dismissal of Mark's complaint and remand for further proceedings in this case. In doing so, however, we emphasize that we do not mean to imply a positive appraisal of the merits of the plaintiff's allegations. These allegations, like those made in *Mark v. Furay,* ultimately might not be supported by admissible evidence

and thus may not survive a trial or even a motion for summary judgment on remand.[2] Furthermore, we understand and empathize with the district court's frustration over the procedural history of this case,[3] and its implicit concern that the case may be frivolous. We note that the district court's concern, if it proves to be justified, might appropriately be dealt with by means of a fees sanction under Rule 11 of the Federal Rules of Civil Procedure.

### III.

The judgment in No. 83–3059 is accordingly affirmed, and the judgment in No. 83–3060 is reversed and remanded for further proceedings consistent with this opinion. Rule 18 will not apply on remand.

---

**2.** Indeed, there may be grounds for dismissing the plaintiff's complaint on remand other than those discussed by the district court and argued by the defendants before this court. In dismissing the complaint on the basis that the defendants' actions were not committed under color of state law, the district court in fact stated that: "The motion to dismiss is based on several distinct grounds, but only one shall be discussed as the court finds it dispositive." *Mark v. Rita,* slip op. at 3. We leave the consideration of any such additional grounds for dismissal, including the possible collateral estoppel effect of the summary judgment in *Mark v. Furay,* to the sound discretion of the district court on remand.

**3.** Mark filed the complaint in the present case on March 23, 1982, nearly three years after he filed his complaint in *Mark v. Furay,* and indeed over two months after the defendants' motions for summary judgment were filed in *Mark v. Furay.* In its opinion in *Mark v. Furay,* the district court expressed the view that the purpose of the present case against Rita, Petta, and Maly was "to avoid the court's ruling" in *Mark v. Furay* denying the plaintiff leave to take further depositions (presumably of Rita and Petta) "because leave was sought after the case had been prepared for trial." *Mark v. Furay,* slip op. at 3 n.*.