**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0304n.06

**No. 12-3478**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| BRADLEY WATSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| CITY OF MARYSVILLE, et al., | ) | OHIO |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |
| | ) | |

**FILED**
***Mar 26, 2013***
DEBORAH S. HUNT, Clerk

Before:  SILER, SUTTON, and McKEAGUE, Circuit Judges.

**SILER, Circuit Judge.**  Plaintiff Bradley Watson, while walking through a residential neighborhood, was stopped and questioned by police because he matched the description of an armed suspect in the area. He was carrying a black computer bag, which police believed might contain a weapon, and he was told not to touch the bag during his questioning.  Despite repeated warnings, Watson reached into his bag.  Officers immediately tased him and then arrested him for obstruction of official business.  He was convicted of this charge in state court and subsequently asserted 18 causes of action in federal court against the City of Marysville, Ohio (the "City"); Police Chief Floyd Golden; Assistant Police Chief Glenn Nicol; Officer Christopher Diehl; and Sergeant Ronald Nicol. The district court granted summary judgment in favor of Defendants, concluding that Watson's

claims were barred by qualified immunity and his state court conviction for obstruction of official business. For the following reasons, we **AFFIRM.**

**I.**

In June 2008, the Marysville Police Department received a phone call regarding a suspicious male walking in a residential neighborhood and carrying an assault rifle. Officer Diehl responded to the call and was dispatched to the neighborhood where he observed Watson sitting on a bench near the suspect's reported location. Watson matched some of the suspect's physical characteristics and was carrying a shoulder bag.

Upon seeing Diehl's police cruiser approach, Watson rose from the bench, grabbed his bag, and began crossing the street in the direction away from Diehl. Diehl called out to Watson and requested that he come speak with him. Although Watson halted, he refused to cross the street in Diehl's direction. Diehl crossed the street, approached Watson, and requested several times that he set down his bag and sit on the curb of the road. Visibly upset, Watson threw his bag into the air, allowing it to fall onto the concrete pavement, and stated that it contained a computer worth $4,000. Diehl proceeded to question Watson, who appeared agitated and belligerent, waving his arms in the air as he spoke. Diehl and Sergeant Nicol, who had just arrived as back-up on the scene, instructed Watson several times to stay away from his bag and remain seated on the ground while they conferred with one another. While the officers discussed the situation nearby, Watson reached for his bag and unzipped it. Diehl and Sergeant Nicol warned Watson that he would be tased if he reached inside of his bag and that he should refrain from touching it. Watson, however, disregarded the officers' commands and reached into the bag, at which point Sergeant Nicol immediately tased,

handcuffed, and arrested Watson for obstructing official business. After Watson was taken into custody, officers confirmed that he was carrying a computer in his bag and that the armed suspect they were looking for was another man located a short distance from the scene of Watson's arrest.

Watson was convicted in state court of obstructing official business. Following his unsuccessful motion for a new trial, he filed his complaint in this case, alleging that Diehl, Sergeant Nicol, and other officers lacked probable cause to search and arrest him and violated his Constitutional rights by doing so. He also alleged state law claims of assault and battery, intentional infliction of emotional distress, respondeat superior (against the City), negligence, negligent hiring, malicious abuse of process, false arrest, and false imprisonment. The district court granted summary judgment in favor of Defendants.

## II.

We review a district court's grant of summary judgment *de novo*. *Sullivan v. Oregon Ford, Inc.*, 559 F.3d 594, 594 (6th Cir. 2009). Summary judgment is appropriate where "there is no genuine dispute as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A. *Heck v. Humphrey*.

We are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), from collaterally attacking a state court conviction. Under *Heck*, a § 1983 suit is not cognizable if it would necessarily invalidate a plaintiff's conviction or sentence, unless the plaintiff can show the conviction or sentence has been set aside. *Sanders v. Detroit Police Dep't*, Nos. 09-2102, 09-2155, 2012 WL 3140232, at *2 (6th Cir. Aug. 3, 2012) (citing *Heck*, 512 U.S. at 487). Additionally, "[t]he existence of probable cause

for an arrest totally precludes any section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution . . . ." *Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir. 1985).

In the underlying state court proceedings, Watson was charged with obstructing official business, which required finding that he purposely prevented, obstructed, or delayed a public official while the official was "acting in the performance of a lawful duty . . . ." *State v. Watson*, No. 14-09-01, 2009 WL 4894663, at *7 (Ohio Ct. App. Dec. 21, 2009). He filed a motion to suppress all statements taken from him and made by him, as well as all physical evidence relating to the incident, on the basis that his detention was unlawful. *Id.* at 3. That motion was denied, as the state court found reasonable suspicion for Watson's detention and probable cause for his arrest. *Id.* Watson was found guilty of obstructing official business and appealed, specifically challenging his conviction and the finding of reasonable suspicion for his detention. *Id.* at * 3, 6. The Ohio Court of Appeals affirmed, finding reasonable suspicion for Watson's investigatory detention based upon his physical characteristics, which closely matched those of the suspect, his abrupt attempted departure upon sight of Diehl, and his subsequent belligerent demeanor. *Id.* at *5. It also affirmed the trial court's finding that Watson's conviction was supported by the evidence presented against him. *Id.* at *8.

Because the state court found that Watson's detention was supported by reasonable suspicion, allowing his unlawful detention claim to proceed would directly contradict the finding below. Similarly, Watson cannot pursue his unlawful arrest claim because doing so would directly contradict his conviction for obstruction of official business. If Watson were permitted to proceed with his unlawful arrest claim, and he ultimately succeeded, his judgment would necessarily imply

that his conviction for obstruction of official business was premised upon an unlawful arrest. Since he presented this argument in state court, and it was explicitly rejected, he is barred from pursuing it via a new cause of action in federal court.

**B. Excessive Force.**

Watson's remaining Fourth Amendment claim of excessive force is barred by qualified immunity. "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The question presented here is whether it was clearly established in June 2008 that using a taser on a suspect disobeying repeated orders amounted to excessive force. It is clearly established that suspects have the right to be free from tasing where they are fully compliant with officers' orders, not resisting arrest, or immobilized and posing no threat of danger. *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012). Although the case at bar does not present facts which fall neatly into this category, cases of like circumstances have found no clearly established right of a suspect to be free from tasing where he or she disobeys police orders and may be in possession of a weapon. *See McGee v. City of Cincinnati Police Dep't*, No. 1:06-CV-726, 2007 WL 1169374, at *5 (S.D. Ohio Apr. 18, 2007).

Watson offers no sustained argument regarding the defense of qualified immunity. He fails to identify any case factually similar to this one, where a police officer has been denied qualified immunity on a charge of excessive force, based upon the tasing of a suspect who disregards repeated

commands and is believed to be armed. Therefore, Diehl and Sergeant Nicol are entitled to qualified immunity on the excessive force claim.

**C. Supervisory and Municipal Liabilities.**

To prove a claim for supervisory liability against Police Chief Golden and Assistant Police Chief Nicol, Watson must show, at a minimum, "that the [supervisors] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006) (internal quotation marks and citation omitted). To prove his claim of municipal liability against the City, Watson must show that its failure to train officers on the proper use of tasers "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Thus, a prerequisite to both of these claims is that a constitutional violation has occurred. *See Hagans*, 695 F.3d at 511 (quoting *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007) (en banc)) (A municipality "cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established."); *McQueen*, 433 F.3d at 470 ("[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct . . . ."). Because Watson cannot show either a clearly established right or a violation thereof, his derivative claims for municipal liability and supervisory liability were also properly dismissed.

**D. Civil Conspiracy.**

Count V of the complaint alleges Defendants conspired to violate Watson's civil rights. Because Watson cannot establish that a violation has occurred, the civil conspiracy claim was properly dismissed. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 462 (6th Cir. 2011)

No. 12-3478
*Watson v. City of Marysville, et al.*

("Since we have concluded that [Plaintiff] has failed to allege facts or to provide evidence sufficient to establish that a . . . violation was committed by the defendants, his conspiracy claims under § 1985(3) also fails.").

**AFFIRMED.**