Michael KUNIK, Plaintiff–Appellant,

v.

RACINE COUNTY, WISCONSIN; Racine County, Wisconsin, Sheriff's Department; Patrick Ketterhagen; James Litwin and Henry Creekmore, Defendants–Appellees.

Michael KUNIK, Chester Adams and Lisa Kretschmer, Plaintiffs,

v.

RACINE COUNTY, WISCONSIN; Racine County, Wisconsin, Sheriff's Department; Patrick Ketterhagen; James Litwin and Henry Creekmore, Defendants–Appellees,

Appeal of Rick HALPRIN, attorney for plaintiffs.

Lisa KRETSCHMER, Plaintiff–Appellant,

v.

RACINE COUNTY, WISCONSIN; Racine County, Wisconsin, Sheriff's Department; Patrick Ketterhagen; James Litwin and Henry Creekmore, Defendants–Appellees.

Chester ADAMS, Plaintiff–Appellant,

v.

RACINE COUNTY, WISCONSIN; Racine County, Wisconsin, Sheriff's Department; Patrick Ketterhagen; James Litwin and Henry Creekmore, Defendants–Appellees.

Nos. 90–1234, 90–1235, 90–1262, 90–1330.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1991.

Decided Oct. 30, 1991.

Rick Halprin (argued), Chicago, Ill., William A. DeMark, DeMark & Piontek, Racine, Wis., for plaintiff-appellant, in Nos. 90–1234, 90–1235, 90–1262, 90–1330.

Susan Shimp Torok, LeRoy Kramer, III (argued), Racine County Corp. Counsel, Racine, Wis., for defendants-appellees.

Thomas Peters (argued), Chicago, Ill., for plaintiff in No. 90–1235.

Cynthia L. Pierce, Josten, Durocher, Murphy & Pierce, Racine, Wis., for plaintiff-appellant in No. 90–1330.

James L. Santelle, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Milwaukee, Wis., for defendants-appellees in No. 90–1330.

Before CUMMINGS, WOOD, Jr. and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

Plaintiffs sued local police and members of the Naval Investigative Service (NIS) under section 1983 and under state tort law. The section 1983 claims alleged a conspiracy to violate plaintiffs' constitutional rights in connection with a murder investigation and prosecution. The district court dismissed the section 1983 and constitutional claims for failing to state a claim on which relief could be granted and dismissed the remaining state claims on a motion for partial summary judgment. Plaintiffs appeal the dismissal of some of the federal claims. In addition, plaintiffs' attorney—Rick Halprin—appeals a contempt fine assessed against him by the district court for the language he used in a motion for reconsideration.

I.

A. *Background*

From the complaint we piece together

these facts.[1] Robert Buckley, a cab driver, was found stabbed to death in his cab on the evening of May 30, 1984. Members of the Racine County Sheriff's Department canvassed the vicinity. At a nearby mini-market, an employee reported to the officers that between 9:00 and 11:00 p.m. a patron she knew had been in the store with two unknown white men. The officers interviewed the patron, who said that the two men had arrived at his home at about 9:45, identified themselves as sailors, said that their car had broken down and offered $40.00 for a ride to the Great Lakes Naval Base, where they were stationed. On the way to the base the three stopped at the mini-market.

Because the Sheriff's Department's investigation led to the base, the department requested and received NIS's assistance. The four federal defendants—Elmquist, Schaefer, Hurt and Wieland—were special agents with the NIS and Schaefer was the assigned agent in charge. The four state defendants—Sheriff Rohner, Deputies Kettenhagen and Litwin—worked for the Sheriff's Department, and Ketterhagen was assigned to the case.

Between May 31 and June 19 Henry Creekmore, a private citizen who shared an apartment with plaintiff Lisa Kretschmer, contacted Schaefer. They met, and Creekmore "indicated that he was interested in the possibility of receiving reward money and favorable treatment for a federal prisoner" in whom he had an undefined interest. Complaint ¶ 21. The complaint alleges that Creekmore then fingered Kretschmer and James Hodges (both civilians), and Kunik and Adams as involved in the homicide.

Schaefer and Ketterhagen interrogated Hodges, who initially denied knowing about the homicide but then "through intimidation" implicated himself, Kunik, Adams and Kretschmer. Hodges was not arrested. Schaefer and Ketterhagen, "knowing Hodges' statement to be false," applied for and received a warrant for Kunik's and Adams' arrests.

Schaefer learned that Kretschmer was the subject of a Lake County burglary prosecution. He allegedly then "caused" Lake County officials to issue a fugitive warrant for Kretschmer's arrest. Adams and Kretschmer, then pregnant by Adams, left the area but were apprehended in Wilkes–Barre, Pennsylvania, on June 21, 1984.

On June 25 Ketterhagen questioned Kretschmer in Wilkes–Barre and allegedly coerced her to implicate herself, Hodges, Kunik and Adams. Adams, advised of his *Miranda* rights, denied involvement and stated that at the time of the murder he was stationed in "Barracks 25" at the base, a disciplinary facility with enhanced supervision and restricted movement. "Certain supervisory personnel" later corroborated Adams' claim that he did not leave the base on the evening of May 30.

Schaefer and Ketterhagen thereafter reinterviewed Hodges and Kretschmer on unspecified dates "to extract through coercion and intimidation" statements impugning Adams' alibi. The two officers also interrogated Barracks 25 personnel for the same purpose, and Schaefer is alleged to have threatened the personnel with criminal prosecutions if they refused to change their testimony supporting Adams' alibi.

On July 24, 1984, while in prison, Kretschmer told authorities that she would not testify or cooperate in the Kunik and Adams prosecutions, claiming that her prior statements were false and made under duress. She was then charged with murder and armed robbery. On September 17, Kretschmer was transferred to the Racine County jail, where she remained until November 14, when she received immunity and was ordered to testify in the Kunik and Adams trial.

On November 18, Kunik and Adams were put on trial for armed robbery and murder. Both produced alibi witnesses.

---

1. We take all well-pleaded factual allegations in the consolidated complaint as true and draw all inferences in the light most favorable to the plaintiffs. *Murphy v. Lane,* 833 F.2d 106, 107 (7th Cir.1987); *Vaden v. Village of Maywood,* 809 F.2d 361, 363 (7th Cir.), *cert. denied,* 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987).

Kretschmer and Hodges, called by the state as witnesses, renounced their prior statements incriminating Adams and Kunik, claiming that the statements resulted from Schaefer and Ketterhagen's "intimidation, threats and coercion." The statements were admitted at the trial as prior inconsistent statements. Kunik and Adams were acquitted on November 27, 1984.

## B. *Plaintiffs' Causes of Action*

Kunik's and Adams' complaint of May 28, 1986, and Kretschmer's of May 30 were consolidated on September 26 in a twelve-count complaint, the essence of which is that the investigators conspired to improperly investigate, falsely accuse and maliciously prompt the prosecution of the plaintiffs in the Buckley incident. The complaint names three groups of defendants: Racine County, the Racine County Sheriff's Department, Sheriff Rohner, Deputies Ketterhagen and Litwin (state defendants); the NIS, supervisor Elmquist and agents Schaefer, Wieland and Hurt (federal defendants); and Creekmore (a private citizen) and Schaneck (a sailor at the base). Plaintiffs seek $1,000,000 in compensatory damages and $10,000,000 in punitive damages.

Plaintiffs appeal the dismissal of Counts I, III, IV and VII, so we review these in detail.[2] Count I alleges that between May 31 and June 10, 1984, Schaefer, Ketterhagen and others conspired to accuse falsely Kunik and Adams of the Buckley robbery and murder. The count claims that the conspiracy grew to include Creekmore, Rohner, Hurt, Schaneck, Wieland, Racine County, NIS, Litwin and the Sheriff's Department and broadened its scope to include defeating plaintiffs' right to civil damages. Pleaded facts supporting the conspiracy include Creekmore's alleged

agreement with Schaefer to provide false testimony, the two allegedly coerced statements from Hodges, the arrest warrants acquired through allegedly false bases for probable cause, the two allegedly coerced interrogations of Kretschmer, an alleged agreement between Schaefer and Kretschmer's attorney to have the Lake County charges dropped in exchange for her testimony, recruitment of Schaneck and Hurt to provide false testimony to impeach Adams' alibi and coercion and intimidation of Navy personnel who had supported Kunik's and Adams' alibis. Plaintiffs claim that these efforts violate their rights under the First, Fourth, Fifth, Sixth and Fourteenth amendments as guaranteed through section 1983.

Count III alleges false arrest and imprisonment of Kunik and Adams for their arrest and trial without probable cause in violation of their rights under the Fourth, Fifth and Fourteenth amendments. Count IV alleges the same for Kretschmer for the time she spent in jail from June 17 to November 14, 1986.[3] Count VII alleges that Schaefer and Rohner carried out illegal and unconstitutional policies at the NIS and Sheriff's Department of seeking to produce or manufacture evidence to convict the plaintiffs. In support of Count VII, the complaint alleges Deputy Litwin made statements demonstrating the Department's decisions that Kunik and Adams were guilty and that the investigation would not be continued after their acquittal.

## C. *District Court Proceedings*

We recount only the proceedings relevant for our purposes. From November 1986 to February 1989, the plaintiffs made several unsuccessful attempts to serve process on the federal defendants. On February 14, 1989, the district court reconsidered an earlier ruling and determined that feder-

---

**2.** Count II, later voluntarily dropped by the plaintiffs, alleged, on the same facts as Count I, conspiracy under 42 U.S.C. § 1985 (1988). Counts V and VI alleged malicious prosecution and abuse of process. Counts VIII to XII allege state law claims: conspiracy under the laws of Illinois and Wisconsin, malicious prosecution, false arrest and abuse of process under Wisconsin law, failure to properly supervise and train

employees in the investigative offices and slander.

**3.** Plaintiffs' later motion for reconsideration clarifies that the Kretschmer cause of action is to cover her jail time between September 17 and November 14 only, the period after she recanted her prior incriminating statement.

**1578**

al defendant Schaefer had been properly served. The other federal defendants had been dismissed.

On March 6 Schaefer renewed an earlier motion for dismissal on the pleadings, which the court granted on September 5, 1989. On September 17 plaintiffs' counsel submitted a motion for reconsideration, which describes the district court's decision as *"unfathomable,"* "hopelessly in error" and "bereft of reason or support." The motion also states that plaintiffs' attorney Halprin "would be remiss in his obligations to the Plaintiffs if he failed to state that the Court's treatment and dismissal of these counts on the basis of the authority cited by the Court borders on the irrational." [4] On October 11, Judge Warren orally ruled that he would not consider the motion with its offensive language and asked Halprin to revise the pleading. On October 13, the remaining state defendants filed motions for partial judgment on the pleadings and for partial summary judgment, pursuant to Fed.R.Civ.P. 12(c) and 56(b), based on the September 5 dismissal of the claims against the federal defendants. On October 27, Halprin filed a response to the motion, which contains his refusal to revise his earlier filing.

The court's January 10, 1990 Decision and Order dismissed the claims against the state defendants because plaintiffs had failed to alert the appropriate state agency within 120 days of the alleged violations, which is a jurisdictional requirement. Wis. Stat. § 893.80(1)(a) & (b); *Mannino v. Davenport,* 99 Wis.2d 602, 615, 299 N.W.2d 823, 829 (1981). The court entered judgment in favor of all defendants. Judge Warren also concluded:

The use of this language and the attitude it exhibits towards this Court and all federal courts is inexcusable. Plaintiffs' counsel is admonished to limit his argument to legal reasoning, and to refrain from *ad hominem* attacks on the defendants, much less upon this Court. Any court in this country can and should expect better deference to be shown to it than plaintiffs' counsel Halprin has exhibited in this memorandum.... Because of the complete lack of respect for this Court which plaintiffs' counsel has exhibited in his memorandum in support of this motion, this Court will sanction plaintiffs' counsel Rick Halprin $150.

Decision and Order at 15–16 (Jan. 9, 1990). Plaintiffs and Halprin then appealed.

### D. District Court Dismissal of Claims Against Federal Defendants

The district court's order of September 5, 1989 dismissed on the complaint all charges against the NIS and Schaefer. We review the court's reasoning only as it relates to Counts I, III, IV and VII.

The court first concluded that immunities protect the NIS and Schaefer from suit. Because the NIS is an arm of the federal government and because the government has not consented to its being sued, sovereign immunity attaches to the agency. Schaefer, reasoned the court, is protected from suit by Kunik and Adams under the doctrine of intra-military immunity, which shields superior officers from suit by subordinates for alleged constitutional violations. *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Ogden v. United States,* 758 F.2d 1168 (7th

---

**4.** Two more excerpts:

It boggles the mind to believe that this Court can find a comparable analysis between the allegations in the Plaintiffs' complaint and the innocuous conduct described in *Cameron* [*v. IRS,* 773 F.2d 126 (7th Cir.1985)]. If this be the case, Plaintiffs ask of the Court what conduct is it that the Court would find aggravating? Murder, arson, rape?

Brief at 8. And:

This writer would be less than candid and fail in his allegiance to the Plaintiffs' cause if he had merely treated the Court's decision as a matter of reasonable men disagreeing. In

the view of this writer, the Court's decision when starkly contrasted with the authority controlling these actions, can neither be justified or understood. At best, the Court's decision presents (particularly in the posture of a Motion to Dismiss) a gross abuse of the Court's discretion. At worst, the decision manifests a clear hostility towards the Plaintiffs' causes of action all of which are grounded in the constitutional imperative. We respectfully remind this Court of John Locke's admonition, "When law ends, tyranny begins."

Brief at 11.

Cir.1985). As an NIS special agent and a civilian employee of the Navy, Schaefer was under the direction of uniformed military officials and "was performing a function critical to the Navy's duty to investigate possible criminal improprieties by Naval seamen." Decision and Order at 11. As such, the claims "relate to the Navy Department's command and disciplinary interest in determining if servicemen committed criminal acts" and are barred as a threat to the chain of command.

The court then reviewed and dismissed the individual charges. The court held that Count I did not allege facts sufficient to prove the existence of an agreement needed to prove a conspiracy under section 1983. "The plaintiffs' allegations of conspiracy are insufficient to establish that the defendants had a 'meeting of the minds.'" Decision and Order at 13–15 (quoting *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir.1982)). Adams' and Kunik's false imprisonment charge (Count III) was dismissed because it lacked "aggravating factors" needed to elevate a common law tort to a constitutional violation. *See Cameron v. IRS*, 773 F.2d 126, 129 (7th Cir. 1985) (discussing aggravating factors requirement). Kretschmer's false imprisonment charge (Count IV) also failed because it lacked aggravating factors and because she had been arrested after a proper probable cause finding on the unrelated burglary count. The court dismissed the fifth amendment claim because plaintiffs failed to plead any process they had been denied, and dismissed the fourteenth amendment equal protection claim because plaintiffs had not alleged constitutionally impermissible animus. Neither of these determinations is challenged on appeal. Following plaintiffs' motion for reconsideration, the court's Decision and Order of January 9, 1990, reviews and confirms its dismissal of the counts on the merits and dismissal of

Schaefer because of intra-military immunity.

## II.

### A. *Standard of Review*

Dismissal on the pleadings is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). Plaintiffs are not, however, entitled to allege mere legal conclusions. *Vaden v. Village of Maywood*, 809 F.2d 361, 363 (7th Cir.1987). Further, "a pleading is insufficient to state a claim under the Civil Rights Act if the allegations are mere conclusions." *Cohen v. Illinois Institute of Technology*, 581 F.2d 658, 663 (7th Cir. 1978), *cert. denied*, 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979). We therefore review the sections of the complaint challenged by plaintiffs to determine whether the pleaded facts could support relief under section 1983.

### B. *Intra-military Immunity*

■ Plaintiffs contend that the district court erred in dismissing Schaefer from the suit on the basis of intra-military immunity because Schaefer's actions included not only Kunik, Adams and other naval personnel interrogated during the investigation, but also non-military personnel—Hodges and Kretschmer.[5]

Plaintiffs underestimate the breadth of the doctrine. The fact that the investigation of the murder included non-military witnesses does not affect the breadth of Schaefer's immunity from suit by Adams. First, the involvement of non-military personnel does not undermine *Chappell*'s rationale of protecting uncompromised loyalty:

The special nature of military life—the need for unhesitating and decisive action

---

5. In its January 9, 1990 Decision and Order, the district court concluded that Kunik had not been a member of the military at the time of the relevant events. This was apparently based on documentary evidence submitted by the plaintiffs. Plaintiffs have not argued how this affects the case, and because this is a proceeding only on the complaint, which alleges Kunik *was* a member of the military, we leave it to the district court on remand to assess the effect of its ruling.

by military officers and equally disciplined responses by enlisted personnel—would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command.

*Chappell v. Wallace,* 462 U.S. 296, 304, 103 S.Ct. 2362, 2367–68 (1983). *Chappell* involved alleged racial discrimination in assignment of job duties and discipline, but the Court found constitutional guarantees muted when the defendant wears a superior officer's uniform:

> Congress, the constitutionally authorized source of authority over the military system of justice, has not provided a damages remedy for claims by military personnel that constitutional rights have been violated by superior officers. Any action to provide a judicial response by way of such a remedy would be plainly inconsistent with Congress' authority in the field.

*Id.*

Second, the involvement of off-base witnesses does not diminish the importance of investigations such as this to maintaining order at the base. We have held that *Chappell*'s rationale applies to a first amendment challenge to regulations restricting enlisted personnel in their off-base, off-duty activities. *Ogden v. United States,* 758 F.2d 1168, 1169 & 1174 (7th Cir.1985). *Ogden* indicates that immunity attaches for activities outside of the traditional hierarchical structure but essential to the military's disciplinary structure. We recognized that "[t]he authority of commanders to issue off-limits orders ... is a traditional part of the 'hierarchical structure of discipline and obedience' that the *Chappell* Court sought to protect." 758 F.2d at 1174 (citations omitted). Similarly, the authority of officers to investigate potentially illegal actions of enlisted men is an integral part of the command structure that the Court sought to protect in *Chappell.*

We therefore affirm the district court's grant of immunity to defendant Schaefer from Adams' claims.

### C. *Conspiracy Under Section 1983*

■■■ Whether a complaint properly alleges a conspiracy depends on whether the alleged facts support an agreement between the defendants. We have stated the test this way:

> There must be allegations that the defendants directed themselves toward an unconstitutional action by virtue of a mutual understanding. Even were such allegations to be made, they must further be supported by some factual allegations suggesting a "meeting of the minds."

*Sparkman v. McFarlin,* 601 F.2d 261, 268 (7th Cir.1979) (plurality) (*en banc* ); *cf. id.* at 275–78 (Swygert, J., dissenting) ("It is unclear what the plurality's pleading requirement of 'some factual allegations suggesting such a "meeting of the minds" ' means."). Judge Swygert wrote in another case, "A civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is agreement between the parties....' " *Hampton v. Hanrahan,* 600 F.2d 600, 620–21 (7th Cir.1979) (quoting *Rotermund v. United States Steel Corp.,* 474 F.2d 1139 (8th Cir.1973)), *rev'd in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). A complaint inadequately alleges conspiracy when the facts it alleges are vague, conclusionary and include no overt acts reasonably related to the promotion of the alleged conspiracy. *Hansen v. Ahlgrimm,* 520 F.2d 768, 770 (7th Cir.1975).

The metaphor "meeting of the minds" provides little substantive direction, but we do extract certain prerequisites to the existence of a conspiracy. First, a conspiracy requires an agreement. Second, the agreement need not be overt, but if not, the alleged acts must be sufficient to raise the inference of mutual understanding. Third, acts performed together by the members of a conspiracy are adequate when they are unlikely to have been undertaken without an agreement. Finally, a whiff of the alleged conspirators' assent cannot await discovery but must be apparent in the complaint. Defendants here contend that the

complaint contains only conclusory allegations which, even if accepted, do not support a "meeting of the minds."

With all due respect for the sometimes Job-like demeanor of the district court in this suit, we believe that the plaintiffs' conspiracy charge was sufficient to survive a challenge on the pleadings. Excerpts from the complaint bear this out. Paragraph 31 provides:

> Sometime after May 31 and prior to June 10, 1984, in the immediate vicinity of the Great Lakes Naval Base, Great Lakes, Illinois, defendants Schaefer, Ketterhagen and others unknown at this time to the plaintiff combined, confederated and conspired to falsely accuse the plaintiffs of the murder and armed robbery of Buckley.... [T]he initial object of this conspiracy was to falsely accuse and arrest plaintiffs Kunik and Adams. Subsequently, the goal of the conspiracy was to manufacture evidence which the conspirators believed would be useful in securing the conviction of the plaintiffs for the murder and armed robbery of Buckley.

Complaint at 10. Paragraph 32 alleges that "Ketterhagen and Schaefer agreed with Creekmore that they would assist him in obtaining reward money and favorable treatment for a federal prisoner in whom he had an interest." Other paragraphs claim that the pair engaged in several acts allegedly in furtherance of the conspiracy, including Ketterhagen and Schaefer's two interrogations of Hodges, the arrest of Kunik and Adams, the interrogation of Kretschmer, the recruitment of Schaneck for the conspiracy and the general joint nature of the investigation. Construing these allegations favorably for the plaintiffs, as we must, the alleged facts could support a conspiracy. The charge is reasonably specific as to time, location and even scope. A motion to dismiss ought not test the veracity of the allegations, so long as they are sufficiently specific. Whether a dispute actually exists over a material issue is grist for summary judgment.

## D. *Constitutional Harms*

Plaintiffs also challenge the district court's dismissal of the complaint's substantive claims.

### 1. *False Arrest and Imprisonment— Kunik and Adams (Count III)*

The district court dismissed Kunik's and Adams' claims of false arrest and imprisonment because they failed to identify "aggravating factors" necessary to elevate the claim to constitutional proportions. *See Cameron v. IRS*, 773 F.2d 126, 129 (7th Cir.1985). The plaintiffs now challenge this.

■ The basis of the aggravating factors doctrine is that the Constitution protects against invasions of liberty more significant than torts that could be remedied through state law. In *Cameron*, a tax protestor sued the IRS, alleging that the Service "badgered" and "harassed" him for taxes he did not owe. Judge Posner, finding no constitutional harm, opined:

> Even assuming ... that a deliberate campaign to harass a taxpayer could deprive him of his liberty without due process of law, more must be shown than a lack of courtesy, accuracy, and restraint by internal revenue agents in the processing of tax returns. Not every interference with peace of mind is a deprivation of liberty within the meaning of the Constitution. Even a battery by a police officer is not a deprivation of liberty unless circumstances of aggravation are present.... Conduct too trivial in its impact on a normal person even to be a common law tort is unlikely to be a deprivation of constitutionally protected liberty. The Constitution must not be trivialized.

*Id.* at 129 (citations omitted).

■ We think *Cameron* is distinguishable. Taking the complaint's allegations of the absence of probable cause as true, Kunik and Adams were required to spend months in jail and to stand trial for a murder charge the authorities knew to be without foundation. These circumstances are sufficiently aggravating to provide a claim under the fourth amendment. False

imprisonment, a state tort, was here "aggravated" by the prolonged period of time and the agony of subsequent trial. Moreover, evidence showing Ketterhagen or Schaefer had Adams, Kunik or Kretschmer arrested on false bases for probable cause would be a due process violation. *Mark v. Furay*, 769 F.2d 1266, 1273–74 (7th Cir. 1985). Plaintiffs have not challenged the district court's equal protection (fifth amendment) analysis, so it is waived.

### 2. *False Arrest and Imprisonment— Kretschmer (Count IV)*

■ Kretschmer's claim (Count IV) is slightly different. The district court ruled that Kretschmer was not entitled to relief because she was arrested pursuant to the valid arrest warrant for burglary. The plaintiffs contend that the valid arrest warrant was issued in Lake County on the burglary charge, while her complaint is for her confinement from September 17, 1984 to November 14, 1984 on charges of the murder and armed robbery of Buckley. They further allege that the district court improperly relied on *Terket v. Lund*, 623 F.2d 29 (7th Cir.1980), in dismissing the cause. *Terket* provides that both a lack of probable cause and malice must be shown to make out an unlawful arrest or false imprisonment claim under section 1983.

■ We do not believe it to be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon*, 467 U.S. at 73, 104 S.Ct. at 2232–33. Kretschmer alleged that on September 17 she "was delivered by the Lake County authorities to the Racine County Jail pending the outcome of the charges against her for murder and armed robbery of Buckley" and that "defendants ... knew there was no probable cause to charge [Kretschmer] with the armed robbery and murder." Consolidated Complaint at 9 ¶ 30, 19 ¶ 39. While there is some confusion as to the dates involved, *see supra* note 3, it is certainly consistent with Kretschmer's allegations that she was held for some period between June 17 and November 14 (apparently from September 17 to November 14) on the murder and armed robbery charges alone, and not pursuant to the unrelated burglary warrant. Count IV must therefore survive the motion to dismiss. On remand, the district court may assess whether Kretschmer was held pursuant to the burglary warrant for the entire period. If she was, then there may, of course, be no genuine issue of material fact as to Count IV. But such a determination requires the court to go beyond the allegations in the complaint.

### 3. *Maintenance of Unconstitutional Policy or Custom*

■ Plaintiffs argue that if a substantive claim under Counts I–IV is revived by this appeal, Count VII, alleging maintenance of constitutionally impermissible policies by the NIS and the Sheriff's Department, must also be revived. The count alleges that because Rohner, Elmquist, Schaefer and Ketterhagen "occupy sufficiently high levels in their respective organizations," their actions in this case constitute the official policy of these organizations, for which section 1983 provides a cause of action. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A *Monell* cause of action arises when a local governing body "executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690, 98 S.Ct. at 2035–36. The doctrine reaches to governmental "customs" but does not countenance *respondeat superior*. *Id.* at 691, 98 S.Ct. at 2036.

The complaint here fails to allege facts that support a *Monell* cause of action. The complaint provides no basis for believing that the allegedly illegal investigatory practices represent official policy, no matter what the official title of the persons engaged in the unconstitutional action. The pleaded facts, without more, give no reason to believe that the alleged improprieties here were more than a single occurrence, which does not generally support a *Monell* cause of action. *Cf. Easter House v. Felder*, 910 F.2d 1387 (7th Cir.1990) (*en banc*) (position of defendant in public administra-

tion not determinative by itself of whether action is either "random and unauthorized" or "predictable and authorized"), *cert. denied,* —— U.S. ——, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991).

### E. *Contempt Holding*

 Finally, attorney Halprin challenges his contempt sanction. Fed.R.Crim.P. 42(a) provides:

> A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

Halprin argues first that the allegedly contemptuous conduct did not threaten the proceedings of the court or risk imminent disruption, entitling him to notice and a hearing under Fed.R.Crim.P. 42(b) rather than summary punishment under 42(a). In addition, he claims that his case does not rise to an "act[ ] threatening the judge or disrupting a hearing or obstructing court proceedings," as described in *Harris v. United States,* 382 U.S. 162, 164, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965). Finally, he claims that the allegations in the pleading represented "zealous advocacy" which cannot be punished absent a finding of intentional misconduct.

The judge here was justified in summarily finding contempt. First, although the contemptuous matter was in a pleading and not in open court, no authority appears to limit the judge's sanctioning authority to what he hears or sees in person, rather than through a pleading. Contemptuous tactics and arguments can be as easily made on paper as in open court. In addition, the sanction could not be said to surprise Halprin, as the court afforded Halprin the opportunity to remove the impertinent comments, but he refused. Third, the section excerpted above exceeds the bounds of zealous advocacy; indeed, Halprin's clients' interests would have been served, not threatened, by his removal of the offensive language. Finally, the sanction was small and not disproportionate to the offense.

*Harris*'s rationale for a hearing is not applicable here. First, the contumacious behavior in *Harris* occurred before a grand jury, so the Court thought a hearing essential to the judge's understanding of the situation. Second, the behavior consisted of a refusal to testify, and "no insolent tactics had to be stopped." 382 U.S. at 165, 86 S.Ct. at 354. Halprin's behavior verged on insolence, especially when he refused to amend his pleading. Third, in *Harris* a hearing may have revealed reasons for the conduct unsuspected by the judge, *id.* at 166, 86 S.Ct. at 355, which is not the case here, where the court observed all of Halprin's behavior. *United States v. Wilson,* 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186 (1975), a case involving a witness' refusal to testify, instructs that a 42(a) sanction may be inappropriate where time is not of the essence and where following 42(b)'s hearing procedure would not cause significant harm. But *Wilson* also provides that summary contempt must be available when "face-to-face refusal to comply with the court's order itself constituted an affront to the court, and when that kind of refusal disrupts and frustrates an ongoing proceeding." 421 U.S. at 316, 95 S.Ct. at 1806. The judge was entitled here to find that Halprin's vituperative language and refusal to modify the pleading constituted contempt. We find no abuse of discretion.

### III.

For the foregoing reasons, the district court's dismissal of Counts I, III and IV is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion, but the dismissal of all other counts is AFFIRMED. The grant of intramilitary immunity to defendant Schaefer and the $150 contempt fine against Halprin are also AFFIRMED.