Andrew SLEDD, Jr., Plaintiff,

v.

Guy LINDSAY, Suspended Sergeant # 2105, Officer Elroy Baker # 3242, Officer Ernest Brown # 5579, Officer Herman Cross # 15497, and the City of Chicago, Defendants.

No. 91 C 1917.

United States District Court, N.D. Illinois, E.D.

Dec. 4, 1991.

Jeffrey H. Haas, G. Flint Taylor, Jr., People's Law Offices, Chicago, Ill., for plaintiff.

Kelly Raymond Welsh, Gregory J. Wojkowski, David Mitchell Zinder, City of Chicago, Law Dept., Corp. Counsel, Chicago, Ill., for defendants Guy Lindsay and Ernest Brown.

Kelly Raymond Welsh, David Mitchell Zinder, Justin Paul Erbacci, City of Chicago, Law Dept., Corp. Counsel, James Patrick McCarthy, Gunty & McCarthy, Chicago, Ill., for defendants Elroy Baker and Herman Cross.

Kelly Raymond Welsh, Patrick J. Rocks, Jr., David Mitchell Zinder, Donald Raymond Zoufal, Justin Paul Erbacci, City of Chicago, Law Dept. Corp. Counsel, Chicago, Ill., James Patrick McCarthy, Gunty & McCarthy, Chicago, Ill., for defendant City of Chicago.

## ORDER

NORGLE, District Judge.

Before the court is the motion of plaintiff Andrew Sledd, Jr. ("Sledd") to reconsider the October 25, 1991 dismissal of his cus-

tom and policy claim.[1] For the following reasons, the motion is denied.

## FACTS

The four individual defendants, Chicago Police Sergeant Guy Lindsay ("Lindsay") and Chicago Police Officers Elroy Baker ("Baker"), Ernest Brown ("Brown") and Herman Cross ("Cross"), allegedly participated in a March 31, 1989 entry into the home of Sledd's mother on the South Side of Chicago. Sledd alleges that the late evening raid took place pursuant to a search warrant the defendants obtained with false information. The four civilian-attired raiders allegedly smashed in the front door without announcing that they were policemen. Baker, with gun drawn and trailed by Lindsay and Brown, allegedly went to the second floor, where Sledd was getting dressed for work. Sledd thought the policemen were burglars, and after looking around a corner at the policemen, was allegedly shot by them in the abdomen. The policemen then allegedly kicked and beat Sledd while refusing Sledd's request that they summon medical help.

The defendant policemen allegedly sought to cover up their wrongful acts by filing false police reports about the raid. In conspiracy with a pair of non-defendants, the four policemen allegedly obtained an admission from Sledd at a hospital shortly after Sledd underwent surgery. Lindsay, Baker and Brown allegedly filed false charges of aggravated assault and possession of cocaine and cannabis against Sledd. Those three defendants allegedly testified falsely in support of those charges in a state court trial. Sledd claims he was acquitted on all charges.

Sledd filed a four-count federal civil rights action against the City of Chicago (the "City"), and the four alleged raiders, Lindsay, Baker, Brown and Cross, on March 29, 1991. The City moved on October 18, 1991 to dismiss Count IV of that complaint, which alleged that the defendant policemen's conduct was the result of a City policy and practice. This court granted the motion to dismiss on October 25, 1991, and gave Sledd 14 days to file an amended complaint. Sledd, however, had already filed an amended complaint on September 12, 1991.[2] In response to the court's October 25 dismissal order, Sledd filed a "motion to reinstate the complaint" on November 7, which the court is construing as a motion for reconsideration, and then filed a "motion to clarify" on November 18. The City filed a response to Sledd's "motion to reinstate" on November 12, urging that Sledd's policy and custom claim be dismissed with prejudice. The City responded on November 25 to the "motion to clarify," adding its own motion to dismiss the pendent state law claims in the amended complaint.

## DISCUSSION

In view of the unusual procedural posture of Sledd's motion to reconsider, the court will apply the standards normally applicable to a motion to dismiss under Fed.R.Civ.P. 12(b)(6) in reviewing the adequacy of Count VII of Sledd's amended complaint, the policy and custom claim. The successive motions and responses filed by the parties have given each an opportunity to discuss this issue and respond to the other side's arguments.

■ On a motion to dismiss under Rule 12(b)(6), the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir.1991). The court, however, need not strain to find inferences favorable to the plaintiff which are not apparent on the

---

1. Sledd's motion was filed as a "Motion to Reinstate Complaint" on November 7, 1991. The court decided on November 15, without objection from any party, to treat the motion as a motion to reconsider.

2. The City contends that its motion to dismiss pertained to Count VII of the amended complaint, the policy and custom count, and that its reference to Count IV, the parallel count in the initial complaint, was a typographical error. The court will apply the motion to dismiss to Count VII of the amended complaint, which will not prejudice the plaintiff under the present circumstances.

face of the complaint. *Coates v. Illinois St. Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir.1977). The plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action. *Id.* The complaint must state either direct or inferential allegations concerning all material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus*, 603 F.2d 1266 (7th Cir.1979). The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Dev. Co.*, 758 F.2d 203, 207 (7th Cir.1985). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transp. Servs., Inc.*, 795 F.2d 591, 594 (7th Cir.1986).

Count VII of the amended complaint alleges that the City, through its Police Department, Police Superintendent, Office of Professional Standards, and director of that office, engaged in various "policies, practices and customs" which proximately caused the alleged violations of Sledd's rights. Among these alleged "policies, practices and customs" are (a) failures to "properly supervise, discipline, transfer, counsel and otherwise control" abusive police officers, including those who use excessive force on suspects, (b) "the police code of silence," and (c) using false arrests, detentions and prosecutions to avoid civil liability, internal disciplinary measures, or criminal liability.

Sledd included in his complaint 21 paragraphs and two appendices of factual allegations which purportedly show the alleged failure to supervise and control. He essentially alleges that 2,000 to 5,000 excessive force complaints against City police officers have been filed annually over the last 15 years with the Police Department Office of Professional Standards ("OPS"), that OPS investigates about 5% of these complaints, that 1–2% are "sustained" or found to have merit by OPS, and that a lesser proportion are sustained after review by

the Chicago Police Board and the Police Superintendent. Sledd also alleges that 20% or more of the complaints have merit, as the Police Superintendent has allegedly acknowledged and various studies allegedly show, and that discipline is often not imposed against officers who are ultimately found to have engaged in misconduct. He further alleges that many of the complaints are against "repeaters" who have not been properly disciplined. Appendix B to the amended complaint contains a list of alleged repeaters.

None of the four defendant police officers is included on Sledd's list of repeaters. Sledd alleges, however, that one or more of the defendants have had meritorious excessive force complaints or other misconduct allegations brought against them, but have not been properly disciplined. Sledd's only specific allegations in this regard are his assertions (1) that Lindsay "unjustifiably caused the death of Thomas McBride" in 1988 and was not disciplined, (2) that none of the defendants has been disciplined for the alleged misconduct which formed the basis for this suit, and (3) that Lindsay had a "drug habit" prior to and during the period of the alleged raid on Sledd's mother's house, but Lindsay was not properly supervised, counseled or disciplined prior to the raid, although the City learned of the drug habit at some point and Lindsay was removed from the police force as a result.

Ten paragraphs of factual allegations are included in the amended complaint which purportedly show the code of silence. Sledd cites several other cases in which there was testimony or findings concerning the alleged code of silence. He also alleges in this regard that only one police officer, Frank Laverty, among the thousands who gave statements or testified in the scores of alleged misconduct complaints and actions Sledd lists in the appendices, has implicated his fellow officers in "brutality or unconstitutional conduct."

The alleged false arrest policy and custom is supported by one paragraph in the amended complaint that merely refers to Appendix C, which lists 57 civil rights cases that appear to have been filed since 1970,

but does not provide any details concerning the facts or holdings of these cases.

■ To establish municipal liability under § 1983, Sledd must show that the City caused the alleged constitutional violations through operation of an unconstitutional city policy or custom, *Woods v. City of Michigan City*, 940 F.2d 275, 277 (7th Cir. 1991) (citing *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)), or as a result of inadequate training or supervision which amounted to "deliberate indifference" toward constitutional protections. *Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1100–01 (7th Cir.1990) (citing *City of Canton v. Harris*, 489 U.S. 378, 388–92, 109 S.Ct. 1197, 1204–07, 103 L.Ed.2d 412 (1989)). The same requirements apply to claims against the individual defendants in their official capacities, which are effectively claims against the city. *Perkins*, 939 F.2d at 469 (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985)).

■ Sledd has failed to show that the City had a policy or custom of using excessive force on criminal suspects, of engaging in a code of silence, or of filing false criminal charges for any reason. Under *Monell*, municipal liability only attaches when a municipal official or employee's "acts or edicts may fairly be said to represent official policy." *Woods*, 940 F.2d at 278 (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. That can only occur when "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986)). Whether a particular official has such authority is a question of state law. *Id.* at 279 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988)). Here, however, Sledd does not allege that any of the individual defendants have final policymaking authority and it is hard to envision how such low-ranking members of a police force in excess of 10,000 members could be considered to have such authority. Nor

does Sledd allege that the four officers' alleged misconduct was directed by anyone with final policymaking authority.

■ Sledd's allegations are instead cast in the mode of a *City of Canton* "deliberate indifference" claim. The City's alleged failure to take adequate corrective measures when it allegedly knew of the excessive force tendencies of many police officers, the code of silence, and the use of false charges allegedly encouraged the alleged violations of Sledd's rights and allegedly constituted a proximate cause of the violations. Sledd alleges that Police Superintendent LeRoy Martin and other high police officials knew that many meritorious misconduct complaints against police officers were rejected and knew of the other general misconduct problems alleged in the amended complaint, but did not take sufficient steps to remedy these problems.

■ To plead a deliberate indifference claim adequately, Sledd must allege facts showing deficiencies in the police disciplinary process *"so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."* *Graham*, 915 F.2d at 1101 (emphasis in original) (quoting *City of Canton*, 489 U.S. at 390, 109 S.Ct. at 1205). The pleading requirement is particularly stringent in cases of alleged deliberate indifference toward police brutality. *See Strauss v. City of Chicago*, 760 F.2d 765, 768–70 (7th Cir.1985).

Sledd's voluminous factual allegations fall short of the mark in a number of respects. He alleges that many meritorious complaints against police officers are rejected by OPS, the Police Board and the Police Superintendent based in part on three deficiencies: (1) an accused police officer is always given the credibility edge when his or her word is challenged by only one accuser, (2) OPS does not adequately investigate complaints, and (3) the code of silence prevents police officers from reporting or testifying about the misconduct of fellow officers. One problem with these allegations, and the lists of statistics and

complaint captions offered in support, are their general and conclusory nature. Sledd's inclusion of OPS statistics on the number of complaints and the percent found to have merit are meaningless because Sledd has failed to identify specific factual patterns in the complaints that are relevant to the alleged deprivation of his rights. *Id.* at 768–69.

Sledd offers no specific factual allegations showing a pattern of misconduct by any of the four individual defendants. Sergeant Lindsay is the only defendant Sledd specifically identifies as having engaged in misconduct prior to the raid on Sledd's mother's home. Sledd alleges that Lindsay "unjustifiably caused the death of Thomas McBride" in 1988, but does not offer any facts at all to support that conclusory allegation. Lindsay is also alleged to have had a "drug habit" for which he was eventually removed from the police force. Sledd offers no facts showing a causal connection between Lindsay's alleged drug problem and the alleged violations of Sledd's rights. Sledd has also failed to offer facts showing that a City policymaker knew or should have known of Lindsay's drug problem prior to the execution of the search warrant issued by a state judge on Sledd's mother's home. Sledd offers a lot of conclusions and conjecture, but hardly any specific facts connecting the individual defendants' alleged violation of Sledd's rights to any City policy or custom.

Moreover, to the extent Sledd is alleging a conspiracy in the code of silence, he has failed to properly plead such a claim. To plead a § 1983 conspiracy, a plaintiff must allege facts showing a "meeting of the minds" of two or more defendants to engage in an unconstitutional action. *Kunik v. Racine County,* 946 F.2d 1574, 1580–81 (7th Cir.1991). A conspiracy complaint is inadequate "when the facts it alleges are vague, conclusionary and include no overt acts reasonably related to the promotion of the alleged conspiracy." *Id.* at 1580. Sledd has provided conclusory allegations concerning the results of the alleged code of silence; the individual defendants were allegedly encouraged to commit unconstitutional acts because they knew their fellow officers would not report them or testify against them. There are no facts in the complaint, however, showing that any specific individuals agreed to follow the alleged code of silence.

Another problem with Sledd's allegations regarding the police disciplinary system is the difficulty in remedying the deficiencies they allegedly show. Assuming the truth of the allegations, what should the City's policymakers have done? Always believed the accuser in one-on-one credibility contests? Flipped a coin? Given OPS an unlimited investigation budget? Forced police officers to testify against other officers? Suspended officers facing complaints until the allegations against them are disproven? Suspended or fired officers with repeated complaints, regardless of the merits of the complaints? Sledd has not identified structural defects in the police disciplinary system with relatively simple solutions. Instead he has apparently focused on broad problems of credibility, resources and burdens of proof.

Sledd, of course, is not required to suggest remedies in order to plead a "deliberate indifference" action. But the City can hardly be held liable for its policymakers' inability to run a faultless law enforcement department in a city of almost three million citizens. Part of the problem in this regard is the broad brush with which Sledd has chosen to paint. A plaintiff must offer much more specificity in showing the problem which the municipality should have prevented or corrected.

In sum, Sledd has failed to plead facts sufficient to show a City policy or custom, or "deliberate indifference" by a City policymaker to constitutional violations, that proximately caused the alleged violations of Sledd's rights. Therefore, Count VII of the amended complaint is dismissed, the City of Chicago is dismissed as a defendant, and the official capacity allegations against the four individual defendants are dismissed, all with prejudice.

The court reserves its ruling on the City's motion to dismiss the pendent state

claim against it, Count VI of the amended complaint.

## CONCLUSION

For the above reasons, the City of Chicago's motion to dismiss Count VII of the amended complaint is granted. The City of Chicago and the official capacity claims against defendants Guy Lindsay, Elroy Baker, Ernest Brown and Herman Cross are dismissed with prejudice.

IT IS SO ORDERED.