26 F.3d 135
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, ex rel., Leocadio BARAJAS,
Plaintiff-Appellant,
Stephen C. Reddy, and the Law Offices of Herbert Hafif, Appellant,
v.
NORTHROP CORPORATION, Defendant-Appellee.
 No. 92-56390.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 15, 1994.
Decided June 2, 1994.
As Amended Aug. 3, 1994.
 
 Before: HUG, WIGGINS and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 FACTS
 
 2
 Barajas was employed by Northrop Corporation. Northrop built Flight Data Transmitters ("FDTs") for the U.S. Air Force. By contract, the FDTs were to operate at -65?F. Northrop was to conduct performance tests. In early 1987, Barajas informed the government that Northrop was falsifying the tests and that the FDTs sometimes did not work at "sub-zero temperatures."
 
 
 3
 Barajas also filed a qui tam complaint in 1987, alleging that tests were falsified and that the FDTs were defective. The United States joined only in Barajas's false test claims. The district court then severed the false test claims from the defective FDT claims. Eventually, the government, Barajas, and Northrop settled the false test claims.
 
 
 4
 In the meantime, a criminal investigation of Northrop had revealed that Northrop knowingly falsified FDT performance tests and fraudulently certified that a certain damping fluid in FDT gyroscopes complied with government contract requirements. In February 1990, Northrop pleaded guilty to false testing. The government dismissed allegations in the criminal case relating to the damping fluid. Barajas pursued the damping fluid allegations, however, adding them to his qui tam complaint by a 1991 amendment. Northrop moved to dismiss the amended complaint on the grounds that the damping fluid allegations were public knowledge before Barajas alleged them and that Barajas was not an "original source" of those allegations.[1]
 
 
 5
 The government, not a party to the severed suit, filed a memo joining in Northrop's motion to dismiss. The government attached a declaration executed by the Assistant United States Attorney who supervised the criminal prosecution of Northrop. The declaration stated in relevant part:
 
 
 6
 1. .... [The criminal prosecution of Northrop] focused on allegations that Northrop ... knowingly used the wrong damping fluid in the FDT.
 
 
 7
 2. I supervised the criminal investigation that led to the indictment of Northrop. .... In January 1989, I ... reviewed documents that [Northrop] produced in response to [a] subpoena. Among the documents ... was a memorandum that stated that the damping fluid that Northrop was using in the FDTs would freeze at cold temperatures. This memorandum and others produced with it was the first information that the government received regarding Northrop's use of defective damping fluid in the FDTs. It was these documents that triggered the government investigation of the damping fluid problem.
 
 
 8
 3. The government was unaware of the fluid issue before we received the documents responsive to the subpoena.
 
 
 9
 The prosecutor also said Barajas supplied the government no information (1) leading to the subpoena or (2) about the damping fluid problem.
 
 
 10
 On December 20, 1992, the district court granted Northrop's motion to dismiss. The court ruled that Barajas was not an original source of the damping fluid allegations. Barajas filed no motion to reconsider. Rather, on January 10, 1993, Barajas filed a notice of appeal from the district court's order.
 
 
 11
 While the appeal was pending, Barajas filed a Rule 60(b) motion in the district court, urging the district court to relieve Barajas of the judgment. The motion stated that (1) the prosecutor declaration was fraudulent and the court apparently relied upon it in granting the motion to dismiss; (2) the government knew long before 1989 that the damping fluid would not function in cold temperatures; and (3) Barajas's statements to the government led to discovery of the damping fluid problem. The motion primarily reargued that Barajas was an original source.
 
 
 12
 Both Northrop and the government objected to the Rule 60(b) motion and requested that sanctions be imposed against Barajas's counsel. On May 15, 1992, the district court denied the Rule 60(b) motion and imposed Rule 11 sanctions against Barajas's counsel for (1) making unsupported, scandalous accusations against the prosecutor; and (2) attempting to relitigate the motion to dismiss, "without any adequate justification." The court called the accusations against the prosecutor "abusive" and "vexatious." The court stated:
 
 
 13
 [the prosecutor] clearly stated ... that ... he was testifying about ... when the government had first discovered proof that Northrop had "knowingly used the wrong damping fluid in the FDT," not when the government first discovered the problem with the damping fluid itself. .... When read in context, it seems painfully clear to this Court that what [the prosecutor] meant to say ... was that the documents he discovered in January 1989 were the first proof that the government had discovered that Northrop had knowingly defrauded the government. .... Barajas' attempts to twist and mischaracterize [the prosecutor's] statements appear to have been motivated by a bad faith attempt to relitigate Barajas' cold temperature allegations.
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 .... While [the prosecutor's] declaration could seem slightly misleading when read out of context, the Court finds absolutely no basis for Barajas' assertions that [the prosecutor] was trying to deliberately mislead or defraud the Court.
 
 
 17
 (Emphasis in original.) The court ordered the government to submit its costs and indicated an intent to impose sanctions on Barajas's counsel in addition to Rule 11 attorney's fees.
 
 
 18
 After receiving (1) government memoranda detailing costs and (2) Appellants' opposition to the fees and additional sanctions, the district court ordered Barajas's counsel to pay (1) $13,625.00 to the United States and (2) an additional $10,000.00 to the clerk of the court. The former payment was ordered under Rule 11, the latter under the court's inherent powers. From the imposition of sanctions, Barajas and his counsel appeal.
 
 ANALYSIS
 
 19
 Sanctions imposed under Rule 11 or a court's inherent powers are reviewed for abuse of discretion. Chambers v. Nasco, Inc., 501 U.S. 32, ----, 111 S.Ct. 2123, 2138 (1991) (inherent powers); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990) (Rule 11).
 
 
 20
 Appellants claim they were justified in accusing the prosecutor of fraud. According to Appellants, the prosecutor plainly stated that "prior to January 1989, the government had no information regarding Northrop's use of defective damping fluid." Appellants cite at length from numerous government documents to show that the government, including the prosecutor, knew as early as 1988 (and possibly 1987) that the damping fluid was defective. Appellants claim that by January 1989 the fluid problems "were the subject of industry[-]wide alerts." The prosecutor's declaration is therefore fraudulent, Appellants conclude.
 
 
 21
 Appellants argue that the court's reading of the prosecutor's declaration renders the declaration irrelevant to the original source question at issue in the motion to dismiss. When the government first learned or had proof that Northrop knowingly used defective fluid is irrelevant to when the government could prosecute, Appellants claim, because even reckless use would support a prosecution. See United States ex rel. Hagood v. Sonoma County Water Agency, 929 F.2d 1416, 1421 (9th Cir.1991). Appellants claim the more relevant interpretation of the prosecutor's declaration is asserted in their Rule 60(b) motion.
 
 
 22
 Appellants also contend that, even if their reading of the declaration was not the most reasonable, their interpretation had colorable merit. "[S]anctions are inappropriate where reasonable and competent attorneys could disagree over the existence of a good faith argument." Community Elec. Service of Los Angeles, Inc. v. National Elec. Contr. Ass'n, Inc., 869 F.2d 1235, 1243 (9th Cir.), cert. denied, 493 U.S. 891 (1989).[2]
 
 
 23
 In response, the government claims the district court correctly interpreted the prosecutor's declaration and that the district court's interpretation was the only one objectively reasonable. The prosecutor, was interested only in whether Northrop intentionally used defective fluid; only that information supported a criminal prosecution. The government also claims Appellants have failed to show the prosecutor's intended to mislead.
 
 
 24
 The government further argues that the prosecutor's declaration as read by the district court was relevant to the original source issue. The declaration shows that neither (1) Barajas's statement that the FDTs did not work in "sub-zero temperatures," nor (2) Barajas's statement that the FDTs were defective led to Northrop's indictment for knowing use of the damping fluid.[3]
 
 
 25
 Next, the government argues that Appellants' attempt to relitigate dismissal presented an alternative ground for sanctions. The district court may sanction a party for filing a frivolous motion to set aside a judgment or order. See Ahern v. Central Pac. Freight Lines, 846 F.2d 47, 50 (9th Cir.1988).
 
 
 26
 The district court characterized Appellants' allegations against the prosecutor as "abusive and vexatious litigation behavior." Appellants' motion referred to the prosecutor's declaration as "putrid," "despicable," a "cheat," and a "fraud." Use of "offensive" and "vituperative" language can also support sanctions, the government notes. Kunik v. Racine County, 946 F.2d 1574, 1583 (7th Cir.1991) (holding that use of offensive and vituperative language and failure to obey a court order supported a contempt sanction).
 
 
 27
 We reverse. The prosecutor's declaration was factually inaccurate. The government did have knowledge of the damping fluid problem prior to receiving documents from Northrop under subpoena. Appellants reasonably concluded, from documents in the record, that the prosecutor knew this fact. Thus, Appellants' interpretation of the prosecutor's declaration was reasonable. Appellants' interpretation also renders the declaration more relevant to the original source issue addressed in the motion to dismiss than does the government's interpretation of the declaration. In fact, as we noted at oral argument, information about Northrop's knowledge had no bearing on the determination of whether Barajas was an original source. Because Appellants' fraud allegation had a sound basis in fact, it follows that the district court abused its discretion by sanctioning Appellants. Lloyd v. Schlag, 884 F.2d 409, 414 (9th Cir.1989) (reversing as abuse of discretion the imposition of sanctions on counsel for filing a Rule 60(b) motion that had a "sound basis in fact"); see Conn v. Borjorquez, 967 F.2d 1418, 1421 (9th Cir.1992) (reversing as abuse of discretion the imposition of sanctions on counsel for filing a motion for reconsideration that was "soundly based in fact").
 
 
 28
 We find that the allegedly alternative ground for sanctions, that Appellants attempted to relitigate the motion to dismiss, was not truly alternative. The district court, in stating this ground for its decision, said sanctions were justified against Appellants "for attempting to relitigate ... without any adequate justification." (Emphasis supplied.) If the prosecutor's declaration had not justified the Rule 60(b) motion, this statement might have been correct. But the prosecutor's declaration justified the Rule 60(b) motion. Thus, the attempt-to-relitigate ground, being derivative of the prosecutor's declaration ground rather than alternative to it, also fails.
 
 
 29
 Appellants' use of so-called "offensive" language also fails to support sanctions. Our holding regarding the prosecutor's declaration renders such language merely harmless hyperbole. We would not have used some of the words to which the government objects. But given that Appellants justifiably believed fraud was at issue, the bare fact that they used strong language to describe that fraud does not support sanctions. Kunik is distinguishable; there the offensive language was coupled with disobedience to court orders. 946 F.2d at 1583.
 
 
 30
 In light of our disposition, we deny the government's request for attorney's fees on appeal. The appeal had merit. And the arguments in the Appellants' brief that the government calls frivolous or misleading are neither frivolous nor misleading so as to warrant sanctions. For the foregoing reasons, the imposition of sanctions against Appellants is REVERSED and the government's request for sanctions on appeal is DENIED.[4]
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 3730(e)(4) of 31 U.S.C. provides in part,
 (A) No court shall have jurisdiction over [a qui tam ] action ... based upon the public disclosure of allegations or transactions in [various proceedings or documents] ... or from the news media, unless ... the person bringing the action is an original source of the information. (B) ... '[O]riginal source' means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing [a qui tam action] which is based on the information.
 
 
 [2]
 Appellants also note that the district court ruled on the motion to dismiss without first hearing oral argument. Oral argument would have given Appellants a chance to rebut the prosecutor's declaration. The government notes, however, that the district court generally is entitled to rule without oral argument. See Biotics Research Corp. v. Heckler, 710 F.2d 1375, 1379 (9th Cir.1983). The government also notes that Appellants caused the originally-scheduled hearing on the motion to dismiss to be cancelled by suggesting a few days prior to the hearing that the district court recuse himself. Appellants did not request oral argument thereafter. Finally, the district court said that the prosecutor's declaration played no part in its decision on the motion to dismiss; thus, Appellants were not prejudiced by being unable to rebut it. We conclude that the failure of the district court to hold oral argument on the motion to dismiss was not error. Nor does it appear that the failure to hold oral argument contributed to the imposition of sanctions against Appellants
 
 
 [3]
 The government also notes that the issue on appeal is not whether the declaration was irrelevant but whether the Rule 60(b) motion was sanctionable. The government contends that Appellants should not now be able to argue that the prosecutor's declaration was irrelevant, because Appellants failed to raise that argument below. The government misses the point of Apellants' relevancy argument. Appellants do not argue that the Fahey declaration should not have been submitted because it was irrelevant. Rather, Appellants contend that the district court's reading of the declaration renders it irrelevant. The district court's interpretation of the document is itself, in turn, relevant to whether Appellants' conduct is sanctionable. Appellants argued below that the district court's reading of the declaration was improper
 
 
 [4]
 In view of our disposition, we need not and do not decide whether the government would be precluded from receiving Rule 11 sanctions because the government (1) failed to mitigate fees and costs or (2) was a nonparty